COMMONWEALTH of Kentucky, DEPARTMENT OF HIGHWAYS, Appellant,

v.

Clyde A. WHITLEDGE and His Wife, Elsie Whitledge, Appellees.

Court of Appeals of Kentucky.

Oct. 7, 1966.

John B. Breckinridge, Atty. Gen., William A. Lamkin, Jr., Asst. Atty. Gen., Frankfort, Dandridge F. Walton, Madisonville, Thomas L. Withers, Henderson, for appellant.

William M. Deep, King, Deep & Branaman, Henderson, for appellees.

STEWART, Judge.

This proceeding was instituted in Henderson County by the Commonwealth of Kentucky, Department of Highways, against Clyde A. Whitledge and Elsie Whitledge, his wife, to obtain land to reconstruct U. S. Highway 41. The land sought to be condemned, which is an unimproved tract, abuts on the west side of the existing highway, approximately one mile south of the City of Henderson.

U. S. Highway 41 runs in a north-south direction through Henderson County. The east line of the landowners' original tract fronted 318 feet on the right of way of the highway and extended back perpendicularly

259 feet on the south side and 266.25 feet on the north side. The west line of the tract, after the taking, remains unchanged at 321.7 feet in length. The land condemned by the Commonwealth for permanent right of way was .51 of an acre, which comprised an acquisition of 26 per cent of the original tract. The new right of way line on the south boundary is 66 feet from the old line; and, on the north boundary, is 71 feet from that line. The Commonwealth will own a strip 48 feet in depth between the new pavement and the newly established property line. When the highway is reconstructed, the deepest cut will be approximately three feet next to the property line at the south boundary.

The commissioners' award in county court was $3520 in amount, $2520 of which was allowed for the value of the land taken, and $1000 of which was assessed as damages to the remainder of the property. The Commonwealth appealed from the award on the ground that it was excessive, and the landowners on the ground that it was inadequate.

All of the improved property in this general area is residential, the nearest commercial or industrial property being 1.5 miles to the south. One of the landowners testified he purchased the tract on which to construct a home, and admitted a house could be built on the land that remained. The Commonwealth introduced one appraiser who testified that the highest and best use of the land was residential and based his valuation opinion on such use. In addition, in formulating his valuation, he stated he relied upon prices recently paid for comparable properties sold privately in this community. His appraisals were: Market value of the whole tract, $9540; after value of the tract resulting from the taking, $4890; value of the land condemned, $3150; damages to the remainder of the tract from the taking, $1500; and total for the taking and the resulting damages, $4650.

This witness stated that a house could be built on the remainder of the lot at a distance of approximately 30 feet from the new right of way and in line with the Wayne Gregory residence, immediately south of the Whitledge property.

Clyde Whitledge, one of the landowners, gave these estimates: Market value of the whole tract, $15,000; after value of the tract resulting from the taking, $4000; value of the land condemned, $4050; damages to the remainder from the taking, $6950; and total for the taking and the resulting damages, $11,000.

Melvin Hunt, a witness for the landowners, testified to these valuations: Market value of the whole tract, $15,900; after value of the tract resulting from the taking, $5883; value of the land condemned, $4136; damages to the remainder of the tract from the taking, $5881; and total for the taking and the resulting damages, $10,017.

The last witness for the landowners was a real estate broker whose estimates were: Market value of the whole tract, $12,720; value of the tract resulting from the taking, $3170; value of the land condemned, $3450; damages to the remainder from the taking, $6100; and total for the taking and the resulting damages, $9550.

The jury found that the market value of the land taken was $3550 and that the damage to the remaining land, created by the taking, was $3680. The total verdict was for the sum of $7230.

Two grounds, which we believe are meritorious, are urged for reversal of the judgment: One was the refusal of the trial court to permit one of the landowners in testifying to state the purchase price paid for the property on August 10, 1956. The other was that the allowance of any damages in respect to the land not taken, under the facts presented, was not reasonable or valid. Also, certain other errors are assigned that will be discussed, as there will no doubt be another trial of this proceeding.

Five years and two months after the Whitledges purchased the property in litigation, the instant proceeding was begun to condemn the portion of it hereinbefore noted. When Clyde Whitledge, one of the landowners, was asked on cross-examination how much was paid for the property, the trial court refused to let him state the amount of the consideration. By way of avowal, he said that the price he gave for the property, plus 100 feet he subsequently sold off the south end to one Wayne Gregory, was $4500, which sum aggregated $10.76 per front foot. The trial judge's reasoning in excluding the testimony concerning this sale was that, after a lapse of five years, the transaction was too remote in point of time to be resorted to as a proper standard to measure the market value of the property at the time of this condemnation proceeding.

■ In Nichols' The Law of Eminent Domain (3rd Ed.), Vol. 5, sec. 21.2, pp. 411 through 414, it is pointed out that the price paid for property which is the subject of condemnation is admissible, if these conditions are satisfied: The sale was bona fide; the sale was voluntary, not forced; the sale occurred relatively in point of time; and the sale covered substantially the same property involved in the condemnation proceeding. In the case of Taylor, etc. v. State Roads Commission of Maryland, 224 Md. 92, 167 A.2d 127, the fact that a sale of similar property was made five years, one and one-half months prior to the commencement of the action to condemn did not render evidence of that sale inadmissible in such condemnation proceeding. The court said in that case:

"'* * * We think it the better policy, where there are any reasonable elements of comparability, to admit testimony as to the sales, and leave the weight of the comparison for the consideration of the jury, along with such distinguishing features as may be brought out on cross-examination or otherwise.'"

Cf. Maxwell v. Commonwealth, Dept. of Highways, Ky., 404 S.W.2d 9, 11, where evidence concerning comparable sales that took place six years before the taking was held not so remote as to lack relevancy in a condemnation action.

■ We conclude the sale price of the property in controversy on August 10, 1956, was pertinent to the market value of that property on October 3, 1961, and that it was prejudicial error to exclude this factor from the consideration of the jury.

Under the evidence introduced, the award in the case at bar of any amount for resulting damages was unauthorized. The only change that will be wrought in the size of the tract is the taking from it an average of 68.5 feet from the front or east side. The property was valued as a whole, before the condemnation, on a front foot basis by all who testified. The Commonwealth's witness fixed $30 per front foot as his estimate; those testifying for the landowners set $40 to $50 per front foot as their appraisals. The landowners' witnesses stated their valuations were based upon considerations that the highest and best use of the property was for a commercial or industrial purpose. As has been noted, the Commonwealth's witness believed its most advantageous utilization was residential.

The witnesses for the landowners testified the damages that occurred to the remainder of the tract reduced its value 50% to 65%. The basis for such estimates seems to have been that, after the taking, enough land would not be left for a suitable building site, unless the landowners filled in extensively with dirt the balance of their tract. In this connection, one of the witnesses for the landowners said the most adaptable portion of the tract for all purposes, commercial, industrial or residential, was that condemned by the Commonwealth.

■ In considering the testimony as to valuations the jury found that the Commonwealth should pay $3550 for the strip

facing on the highway. If and when the Commonwealth acquires this frontage at the figure assessed by the jury, or at some figure which may later be determined, it should not be compelled to pay, in addition, the cost of replacing a new frontage similar in all respects to the one taken. See Commonwealth, Dept. of Highways v. McGeorge, Ky., 369 S.W.2d 126. The landowners, who will be fully compensated, as is the usual case, for the land taken, are not entitled to receive more money, namely, $3680, by way of damages for a like amount of land that would add the necessary depth to the tract, in order that it may be made more suitable for a construction purpose of any kind. See Commonwealth, Dept. of Highways v. Raybourne, Ky., 364 S.W.2d 814. The instant proceeding was tried before this court handed down the opinion in Commonwealth, Dept. of Highways v. Sherrod, Ky., 367 S.W.2d 844, referred to hereinafter.

■ Thus, the award of the jury of $3680 for so-called damages to the remainder of the land amounted to a duplication of compensation. The McGeorge case, cited above, in speaking of such doubling of damages, had this to say:

" * * * This has been a frequent incident of assessing separate elements of damage instead of confining the inquiry simply to the difference in market value of the landowner's property as a whole before and after the taking, and is one of the pitfalls sought to be eliminated in the future by the rule set forth in Commonwealth, Dept. of Highways v. Sherrod, Ky., 367 S.W.2d 844 (1963)."

■ As this action may be tried anew, it is necessary to discuss what we believe were other errors committed in connection with certain evidence that was permitted to be introduced. The landowners' counsel, over the objection of the Commonwealth, was allowed on cross-examination to go into some detail with the Commonwealth's engineer in bringing out the distance the landowners would be required to travel up and down the highway to and from their tract in order to use the crossovers. The crossover to the north is 450 feet from the landowners' property line, and the one to the south is 100 feet therefrom. No access rights were condemned, and evidence of this character has no place in a proceeding such as the one before us. See Commonwealth, Dept. of Highways v. Carlisle, Ky., 363 S.W.2d 104.

■ The landowners' counsel was also allowed to ask the Commonwealth's engineer, over the Commonwealth's objection, why the taking was 10 feet deeper on this tract than on the Wayne Gregory property south of and adjacent to this tract. This was error. The question of the necessity of the taking as to amount was not put in issue in circuit court by the pleadings. This issue had already been determined in county court.

■ The judgment, we believe through clerical misprision, incorrectly allowed interest on the total recovery of $7230, although the sum of $3520, which was awarded by the commissioners, was deposited in county court. It is only the excess of the circuit court judgment over the county court judgment which should bear interest from October 3, 1961, as provided in KRS 177.087(5).

Wherefore, the judgment is reversed and the case is remanded for proceedings not inconsistent with this opinion.