Mary Frances **RODGERS** et al., Appellants,

v.

**Billy Todd CHESHIRE, Executor of the Will of Ora Cheser, Deceased et al., Appellees.**

Court of Appeals of Kentucky.

Sept. 29, 1967.

As Modified on Denial of Rehearing
Dec. 15, 1967.

E. Gaines Davis, Jr., Smith, Reed, Yessin & Davis, Frankfort, for appellants.

Marion Rider, Billy Todd Cheshire, Allen Prewitt, Richard A. Prewitt, Prewitt & Prewitt, Frankfort, for appellees.

STEINFELD, Judge.

Mary Frances Rodgers, niece of the decedent, and Mary's husband sued to contest the instrument probated as the last will of Ora Cheser. They claim that the testatrix lacked the necssary mental capacity to make a will and that if she had testamentary capacity she acted under undue influence. The jury found "in favor of the defendants" whereupon the court "adjudged that the writing dated March 6, 1964, * * * is the last will and testament of Mrs. Ora Cheser, deceased." The contestants have appealed. We affirm.

Mrs. Cheser who could neither read, write, count money, nor dial a telephone and who had been in extremely poor health for many years, left an estate in excess of $50,000.00 when she died on March 20, 1964, at the age of 78. She had outlived four husbands. From her second husband, who died in 1931, she inherited several parcels of rental property which she managed, and from time to time sold pieces at a profit. Her last spouse died in 1958. She was childless, had no brothers, and only two sisters, both of whom predeceased her by many years. One sister had one child, appellant, Mary Frances Rodgers. The other sister had many children. They, and the respective spouses of the married ones, were made defendants below and appellees here.

Mrs. Cheser had spent numerous periods in nursing homes and had returned to her own residence after each stay. For many years she had received assistance from friends, relatives and her attorney in business and personal matters and she had enjoyed the company and help from family and friends during periods of illness.

In 1958 Mrs. Cheser made a will by which she left $300.00 to her friend, Myrtle Robertson; $4,000.00 to her niece, appellant, Mary Frances Rodgers, and the residue to her lifelong friend and sister-in-law, Mattie Barbour. Mrs. Barbour was the sister of the man Mrs. Cheser married in 1906. This will was lodged with the county clerk for safekeeping. KRS 394.110.

Mrs. Cheser wrote another will in 1962 by which she directed that $300.00 go to Myrtle Robertson and $3,000.00 to Mary Frances Rodgers. She provided that the remainder be held in trust for Mattie Barbour for her lifetime and then it was to go, share and share alike, to those of Mrs. Cheser's nieces and nephews who survived Mrs. Barbour. This will was left with the county clerk.

On November 12, 1963, Mrs. Cheser asked her attorney whether she could tear up the 1962 will and thereby reinstate the 1958 will which had not been destroyed. Believing that the law permitted this, her attorney so advised her and watched her destroy the 1962 will. He then returned the 1958 will to the county clerk to be kept by him. All parties to this litigation agreed that the advice given by the attorney was

erroneous and that having destroyed the 1962 will Mrs. Cheser was then without a will.

In the latter part of February 1964 or the first part of March 1964 Mrs. Cheser sent word to her regular attorney that she wanted to see him for the purpose of writing a new will. He was unable to come, whereupon Mrs. Cheser asked an acquaintance to get her a lawyer who could write a will for her. Mr. Billy Todd Cheshire, a lawyer, was requested to come to the residence which he did on the morning of March 6, 1964. After discussing the matter with Mrs. Cheser and ascertaining what she wanted he returned to his office, prepared the instrument in controversy, and returned to the residence with his secretary where and when it was executed by Mrs. Cheser.

After directing payment of debts and funeral expenses she gave all of her property "to Lucille Cornman, Mary Frances Rogers, Marie Thompson, Vera Lee Perkins and Ida Belle Metts, equally, share and share alike, absolutely and in fee simple" and she named Mr. Cheshire as executor. Three of the beneficiaries were nieces of Mrs. Cheser and the other two were practical nurses who had served her.

█ The will was probated in the Franklin County Court after which its validity was contested only by Mr. and Mrs. Rodgers. They claim that the trial court erred in permitting counsel for the propounders to badger witness Mattie Barbour on an immaterial matter in an effort to discredit her material testimony. They say that this was reversible error and cite Gunterman v. Cleaver, 204 Ky. 62, 263 S.W. 683 (1924). The interrogation complained of was during cross examination and was an effort to show such bias or interest as might affect Mrs. Barbour's credibility. Lexington Glass Co. v. Zurich General Acc. & Liability Ins. Co., Ky., 271 S.W.2d 909 (1954). We have carefully examined the transcript showing the proceedings while Mrs. Barbour was testifying to see if com-

plaint was made that the witness was being mistreated and if there was badgering. We found no mistreatment of the witness. The only objections by counsel for appellants was with respect to the competency of the subject of one question, and that one specific question was asked three or four times. The objections were unrelated to "badgering the witness", therefore, a waiver of that complaint occurred. River Queen Coal Co. v. Mencer, Ky., 379 S.W.2d 461 (1964).

The next claim of error is that the court refused to allow counsel for the contestants to base a question propounded to the decedent's physician upon the testimony of another witness. Counsel undertook to relate to a physician the testimony of a minister who described Mrs. Cheser's appearance when he saw her on March 6, 1964. The transcript shows the following:

"Q. 80 That was just about it. Now Doctor, suppose you were told or suppose you knew that Brother Lyons had testified under oath sitting where you are now—

MR. PREWITT: Objection to him telling one witness what somebody else testified.

BY THE COURT: Sustained."

█ No request was then made for permission to complete the question out of the hearing of the jury. No avowal was put into the record. We are not now in a position to say that the contestants were prejudiced by the ruling of the court. There had been a separation of witnesses. CR 43.09. The trial judge is vested with reasonable discretion in controlling the examination of witnesses. He did not exceed his authority. Stout v. Commonwealth, (1906), 123 Ky. 184, 94 S.W. 15, 13 Ann.Cases 547. After the objection was sustained no further questions were propounded to the doctor. We find no merit in this claim for reversal.

█ The next issue is the claim that the court erred in permitting counsel for

the proponents to argue on the basis of his personal experience outside the record. Cited are: Louisville & N. R. Co. v. Hull, 113 Ky. 561, 68 S.W. 433, 57 L.R.A. 771 (1902); Louisville & N. R. Co. v. Carter, 27 Ky.Law Rep. 748, 86 S.W. 685 (1905); Weil v. Hagan, 161 Ky. 292, 170 S.W. 618 (1914); Gunterman v. Cleaver, supra; Whitney v. Penick, 281 Ky. 474, 136 S.W.2d 570 (1940). In each of these cases the complaining counsel objected to the statement and obtained a ruling of the court. It is true that in Gunterman v. Cleaver, supra, we said: "It is the duty of the presiding judges of circuit courts, in jury trials, upon their own motion to interfere in such cases and to stop such argument. This is due to truth and justice. If counsel persevere in arguing upon facts not before the jury, or appealing to prejudices foreign to the case, exceptions may be taken by the other side, which may be good grounds for a new trial or for a reversal in this court." The Gunterman case was a case of persistent misconduct. Our recent cases make it clear that in the situation now before us counsel cannot remain silent and then rely upon the claim that the argument was improper. Greathouse, et al. v. Mitchell, Ky., 249 S.W.2d 738 (1952) wherein we said: "An objection to the remarks and conduct of counsel must be made at the time and a ruling had thereon, else they cannot be considered on appeal." Wagner v. Emmett, Ky., 280 S.W.2d 210 (1955); River Queen Coal Co. v. Mencer, supra. Since counsel for the contestants did not object to the alleged improper argument, and did not move the trial court to admonish the jury not to consider the remarks and sought no ruling at the time we will not consider this claim. Prichard v. Kitchen, Ky., 242 S.W.2d 988 (1951); Louisville & Jeff. County Metro. Sewer Dist. v. Kirk, Ky., 390 S.W.2d 182 (1965).

█ It is also contended that the court erred in permitting counsel for proponents to make a crucial misstatement of facts in his closing argument. The basis for this claim is the following:

"Here she has two fine doctors waited on Mrs. Cheser for I think they said two or three years, had seen Mrs. Cheser before her death some forty times, more than forty, forty-one or forty-two times, men qualified, fine doctors, talked to her, treated her, and they told you that on March 6 Mrs. Cheser had the mentality to make a will. What is the answer to that? Are they liars? Are they frauds? Are they telling you the truth? Any reason for them not to be telling you the truth?

Mr. Davis: If Your Honor please, I would like to interpose an objection, it was not so testified as to March 6.

By The Court: Overruled.

You heard them tell you she had the power to make the will. You heard one of them tell you he had been there in her home on March 5th, the evening before, you heard him tell you that he was back on March 9th. Gentlemen, it is up to you. What can you say to that? What can you say? Would you disbelieve she had the mental capacity to make a will?"

The doctors testified that they saw Mrs. Cheser on eleven different dates beginning February 29, 1964, and ending on March 20, 1964. They stated the specific days when they were with her. One of these dates was March 5th. One physician was asked and answered as follows:

"Q. 40 Now while she was home during this period of February 15, 1964, until you sent her to the hospital on March 16th state whether or not in your opinion Mrs. Ora Cheser had sufficient mind and memory to know the character and extent of her property, the natural objects of her bounty and her duty to them, if any, and to dispose of her property according to a fixed purpose of her own?

A. When I saw her at home I thought she did."

Counsel has wide latitude in arguing to jury. Arnett v. Dalton, Ky., 257 S.W.2d 585 (1953). The argument quoted is fairly deducible from the evidence. We find nothing improper in the argument. Wells v. King, 219 Ky. 201, 292 S.W. 777 (1927).

 The remaining contention is that the verdict was flagrantly against the evidence. In support of that argument appellants cite Golladay v. Golladay, Ky., 287 S.W.2d 904 (1955). It seems unnecessary for us to summarize the testimony of the many witnesses who appeared before the trial court. The physicians gave opinions and they and others testified to facts upon which the jury was authorized to find that Mrs. Cheser had the capacity to make a will and that she was not unduly influenced. The jury heard the attorney who prepared the will, his secretary and others. The verdict was supported by competent evidence of substance and probative character, therefore, we cannot disturb it. Creech v. Miniard, Ky., 408 S.W.2d 432 (1966).

The judgment is affirmed.

All concur.