**COMMONWEALTH of Kentucky, DEPARTMENT OF HIGHWAYS, Appellant,**

**v.**

**Millard WATSON et al., Appellees.**

Court of Appeals of Kentucky.

March 12, 1971.

Don Duff, General Counsel, C. E. Skidmore, Department of Highways, Frankfort, for appellant.

William M. Deep, King, Deep, Branaman & Hunt, Henderson, for appellees.

VANCE, Commissioner.

This condemnation case involves the taking of 23.79 acres of land through appellees' 449.69-acre farm located approximately one mile southeast of the city limits of Henderson, Kentucky. The taking was to acquire right-of-way for the construction of the Pennyrile Parkway, a limited-access highway. The property owners were awarded $125,000.00 by the jury and the Department of Highways has appealed upon the grounds that the verdict was excessive and was not supported by evidence of sufficient probative value.

Before the taking the west side of the farm had a frontage of 900 feet on U.S. Highway 41 and the north side of the farm was bounded by Adams Lane, a county blacktop road, for a distance of 4,100 feet. U.S. Highway 41 is an important highway leading into Henderson and the city has experienced extensive growth in the direction of appellees' farm.

All evaluation witnesses stated that the highest and best use of the property was as farmland with substantial commercial, industrial and residential-subdivision potential.

The construction of the parkway severed the farm into two tracts, one east of the parkway containing approximately 145 acres and one west of the parkway containing 281 acres. Adams Lane has been raised to form an overpass and the elevation has interfered somewhat with direct access from

Adams Lane to a portion of both the east and west remaining tracts but both tracts have reasonable access from Adams Lane and the tracts are accessible to each other by means of Adams Lane. A barn within the boundary of the right-of-way has been taken and all other major improvements are located on the remaining western 281-acre tract. The values fixed by the witnesses and by the jury were as follows:

| | BEFORE | AFTER | DIFFERENCE |
|---|---|---|---|
| FOR THE HIGHWAY DEPARTMENT: | | | |
| MONTGOMERY | $254,700.00 ($565 per acre) | $219,300.00 ($514 per acre) | $ 35,400.00 |
| LASWELL | $270,000.00 ($600 per acre) | $236,300.00 ($555 per acre) | $ 33,700.00 |
| FOR THE LANDOWNER: | | | |
| FRYER | $375,000.00 ($833 per acre) | $230,000.00 ($540 per acre) | $145,000.00 |
| JURY | $344,300.00 ($765 per acre) | $219,300.00 ($514 per acre) | $125,000.00 |

———◆———

No question is raised as to the qualifications of any of the evaluation witnesses.

The Department of Highways argues that the amount of the verdict is excessive under the *first blush* rule which authorizes setting aside a verdict which at *first blush strikes the judicial conscience as being grossly excessive.* Commonwealth, Department of Highways v. Butler, Ky., 438 S.W.2d 797 (1969); Ballard v. King, Ky., 373 S.W.2d 591 (1964).

The award, which amounts to one-third of the total before-taking value of the farm as fixed by the landowners' witness and more than one-half of its before-taking value as fixed by the department's witnesses, for the taking of only five percent of the land (which does not include any of the land with the highest commercial potential) on its face raises a serious question as to its propriety.

■ It is apparent, however, that the basis of the award is not simply that the farm has been reduced in value by an amount equal to the value of the land taken, but rather that by reason of the taking of the twenty-four acres, the per-acre value of the entire remaining tract has been materially reduced. If there is probative evidence to reasonably support this conclusion, it must be upheld. In cases in which we must resort to an analysis of the evidence to determine if the verdict is supported by probative evidence, the first blush rule has no application. Commonwealth, Department of Highways v. Brent, Ky., 436 S.W. 2d 781 (1969).

We look now to the question of whether the verdict is supported by evidence of sufficient probative value. We note first that there is substantial agreement among all witnesses as to the after-taking value, the variation ranging from a low of $514.00 per acre to a high of $555.00 per acre. The jury adopted the lowest of the after-taking values.

A wide discrepancy appeared in the before-taking values ranging from a low of $553.00 per acre by a department witness to a high of $833.00 per acre by the landowners' witness.

The landowners argue that if the before-taking value established by their witness was reasonably supported by the evidence, the verdict must stand because of the substantial agreement of all witnesses as to the after-taking value.

We cannot say that the before-taking value of $833.00 per acre established by the landowners' witness was unsupported by credible evidence. There was evidence of sales of tracts of land containing fifty or more acres of somewhat comparable property at prices of $600.00, $800.00, $1,200.00 and $1,350.00 per acre. The higher evaluations were for tracts of land smaller than the subject farm and the only tract involving as much as four-hundred acres was the sale for $600.00 per acre. We do not accede, however, to the landowners' theory that if the highest before-taking value is reasonably supported by the evidence and all witnesses have substantially agreed upon the after-taking value, any verdict within the range of the highest before-taking value and the lowest after-taking value must stand.

Where the taking involves a relatively small portion of a large tract, the land remaining after the taking would normally be substantially as valuable per acre as it was before the taking unless the loss of the acreage taken for some reason materially reduced the per-acre value of that which remains. If this is claimed, there must be credible showing of why it is so. In this case the landowners' witness testified that the value of all of the remaining land was reduced approximately $300.00 per acre by reason of the taking. It is this reduction in per-acre value which must be sustained by probative evidence. If the evidence does not offer credible support for the fact that the remaining land was worth so much less after the taking than before, the only reasonable conclusion which can be reached is that the before-taking value was either too high or the after-taking value was too low.

Using the before-taking value established by the landowners' witness, the 24 acres of land taken were worth $20,000.00. His testimony that the difference in the before-taking and after-taking value of the farm was $145,000.00 means that the diminution in the value of the land remaining caused by the taking was $125,000.00. Allocated to the entire remaining acreage, this diminution in value amounted to $300.00 per acre. According to all of the testimony, however, the two remaining tracts were not equally damaged by the taking. The 145-acre tract on the east side of the parkway has sustained the principal diminution in value caused by the taking. The landowners' witness was the chief exponent of this resultant damage. It was occasioned in his opinion by the following circumstances:

(1) Before the taking the entire farm had substantial potential for industrial development. A railroad track was located close to the western boundary of the farm and a spur line could have been extended to the property easily. After the taking the spur line could not have been extended across the parkway to the 145-acre tract. The potential for industrial usage of the 145-acre tract was thus greatly diminished but the 281-acre tract remained accessible to the spur line and its industrial potential was not adversely affected thereby.

(2) The entire farm had great potential for residential subdivision usage. City water and utilities were available across Highway 41 at the northwest corner of the property. After the taking the difficulty of extending utilities across the parkway to the 145-acre tract would reduce its potential for subdivision purposes. The 281-acre tract however would suffer no such damage. Evidence was presented that utilities were available to the 145-acre tract from another subdivision but there would be the expense of extending these utilities for approximately one mile.

(3) All witnesses conceded that the western portion of the farm, especially that portion fronting on U.S. Highway 41, had great potential for commercial development. The rear portion of the farm, especially that portion consisting of the 145 acres severed by the parkway, had little if any potential for commercial development. The 281-acre tract remaining has the same frontage on U.S. Highway 41 and substantially the same poten-

tial for commercial development that it had before the taking.

Although a barn was taken, the value of this farm was so enhanced by its potential for commercial, industrial and residential development that the value of the buildings did not significantly affect either the before or after values, and no witness placed any emphasis upon the value of the barn.

■ It having been demonstrated that the most serious damage to the remaining lands was borne by the 145-acre tract, let us examine what, if any, diminution of value was sustained by the remaining 281-acre tract by reason of the taking. The department argues that the utility of the 281-acre tract for all purposes was as great after the taking as it was before. This assumption may be unwarranted because there was some evidence that the marketability of the 281-acre tract for industrial use was limited after the taking to industries whose requirements did not exceed 281 acres whereas before the taking the land was sufficient to satisfy potential industrial purchasers with requirements up to 450 acres. The possibility that such a limitation of marketability might adversely affect the fair market value of the tract exists but its effect, we feel, is slight.

There was also testimnoy that the grade level has been changed on a part of Adams Lane forming the northern boundary of the 281-acre tract. Although this change might interfere with direct access to some portions of Adams Lane, there is no claim made that reasonable access has been denied. When reasonable access remains, loss of access cannot be considered as a factor in an award to a property owner. Commonwealth, Department of Highways v. Strahan, Ky., 431 S.W.2d 871 (1968); Commonwealth, Department of Highways v. Nantz, Ky., 421 S.W.2d 579 (1967).

The fact remains that after the taking, the landowner has a 281-acre tract of land with the same road frontage on U.S. Highway 41 as before the taking and this tract has substantially the same potential for commercial, industrial and residential-subdivision usage as before the taking. The remaining tract is larger than all of the tracts used as comparables by the landowners' witness supporting his evaluation of the entire farm at $833.00 per acre. The same comparables would likewise support the same per-acre value after the taking.

The landowners' witness fixed the after-taking value of the entire farm at $230,-000.00 or $540.00 per acre. His before-taking evaluation is demonstrably incompatible with his after-taking evaluation.

If the value of the 281-acre tract which remains is computed by multiplying the number of acres by the before-taking valuation price of $833.00 per acre, the value of the remaining 281-acre tract alone is $234,000.00. This would mean that the remaining 145 acres is absolutely worthless and in fact constitutes a $4,000.00 liability to the owner. Yet it is undisputed that the 145-acre tract is fertile farmland with some residential potential.

We note that no witness testified that the 281-acre tract was as valuable after the taking as before but at the same time there was no testimony which would induce a belief in a reasonable person that the remaining 281-acre tract was substantially less valuable after the taking.

We feel that the evidence compels a conclusion that the western portion of the farm with its frontage on U.S. Highway 41 was by far the most valuable part of the farm. This was the part of the farm from which the sales at prices of $2,500.00 per acre and $1,500.00 per acre had been made. With this in mind, we think it is apparent that the per-acre value of the 281-acre tract both before and after the taking exceeded the average value per acre of the entire farm. In that event, the basic error in the testimony of the witness for the landowners is compounded.

■ It is not enough that the verdict be within the range of the evidence, the evidence itself has to have sufficient proba-

tive value to sustain the verdict. Commonwealth, Department of Highways v. Gearhart, Ky., 383 S.W.2d 922 (1964).

Evidence of probative value is evidence having fitness to induce conviction in the minds of reasonable men. Commonwealth v. Tyree, Ky., 365 S.W.2d 472 (1963). A verdict may be set aside where it is based on testimony of a witness which lacks probative value. Commonwealth, Department of Highways v. Darch, Ky., 390 S.W.2d 649 (1965).

We think this case is governed by the principle enunciated in Commonwealth, Department of Highways v. Brent, Ky., 436 S.W.2d 781 (1969) wherein we said:

"It will be noted that the jury valued the property at $500 per acre before the taking. Unquestionably that figure is supported by substantial evidence. It is the *reduction in value per acre* of the land left after the taking that lacks substantial evidentiary support. * * *."

The judgment is reversed.

All concur.