**COMMONWEALTH of Kentucky, DEPARTMENT OF HIGHWAYS, Appellant,**

v.

**Paul J. CECIL et al., Appellees.**

Court of Appeals of Kentucky.

April 2, 1971.

Don Duff, Gen. Counsel, Dept of Highways, Frankfort, Rhodes Bratcher, Bratcher, Cooper & Flaherty, Owensboro, Harvey G. Ershig, Madisonville, for appellant.

Charles J. Kamuf, Beard, Rummage & Kamuf, Owensboro, for appellees.

DAVIS, Commissioner.

In this highway-condemnation proceeding the landowners obtained verdict and judgment for $13,000. The Department of Highways asks reversal, asserting that (1) the court erroneously refused to admit competent evidence offered by the Department; (2) improper evidence and comments in behalf of appellees prevented a fair trial; and (3) the verdict is palpably excessive and not sufficiently supported by evidence of probative value.

The appellees owned a farm of 100.3 acres situated about nine miles west of Owensboro on Ky. Highway 54. Before the taking, Highway 54 severed the farm, so that about 20 acres lay south of Highway 54; the remainder of the land and all of the improvements were north of Highway 54. The right of way taken consists of a tract of 5.17 acres which severs the 20-acre tract, so that a tract of 6.72 acres will lie south of the nonaccess Audubon Parkway (without direct accessibility to the rest of the farm). A tract of 7.21 acres will remain north of Audubon Parkway with the same frontage along Highway 54 as before. The relocation of the Hambleton Ferry Road will afford highway access to the severed tract of 6.72 acres. The Hambleton Ferry Road had not abutted any of the farm prior to its relocation.

Two evaluation witnesses for the Department expressed opinions reflecting "before" values of $49,150 and $48,650; these two witnesses related "after" values of $43,950 and $44,000, resulting in differences between "before" and "after" values of $5,200 and $4,650.

For the landowners two appraisal witnesses appeared. They noted "before" values of $85,000 and $80,000, "after" values of $72,000 and $64,750, resulting in differences of $13,000 and $15,250.

The jury found "before" value of $73,000, "after" value of $60,000; hence, the award of $13,000.

■ The Department sought to have appellant testify that he had bought the entire farm in 1967 for $20,000. The evidence was put in by avowal, in which it was shown that the farm was bought at that price by appellant from his father, not in an arm's length transaction indicative of market value. As noted, the Department's appraisal witnesses opined that the property's market value was at least $48,650, so it cannot be said that the purpose of the Department was to establish market value at only $20,000. The rule which allows evidence of comparable sales as bearing on market value is predicated upon the premise that the sales were bona fide, arm's length

transactions. If, as here, it is made to appear that the sale was actually not within that category, the trial court properly may exclude evidence concerning it. Cf. Commonwealth, Department of Highways v. Cardinal Hill Nursery, Ky., 380 S.W.2d 249, 254; Commonwealth, Department of Highways v. Whitledge, Ky., 406 S.W.2d 833, 836. It was not error to exclude the evidence in these circumstances, but had it been error, there was no prejudice by refusal of the evidence.

The second assertion of error relates to four separate incidents which occurred during the testimony of the Department's two evaluation witnesses. Without detailed elaboration of these points, it suffices to observe that reasonable inquiry is permissible to disclose possible bias or interest of a witness. See Rodgers v. Cheshire, Ky., 421 S.W.2d 599, 601; Lexington Glass Company v. Zurich General Acc. & Liability Ins. Co., Ky., 271 S.W.2d 909, 911. The matter of an expert's being compensated may be brought out, with certain limitations. Current v. Columbia Gas of Kentucky, Ky., 383 S.W.2d 139, 143–144. The treatment of that question was adequately handled by the trial judge. The gratuitous remark by one of appellees' counsel that the condemnor wanted to "steal" the property was improper and perilously near to error requiring reversal. Since the judgment must be reversed on another ground, and since such an error surely will not recur, no further reference to it need be made.

As already pointed out, the verdict was within the range of the evidence expressed by the appraisal witnesses. The witnesses for the Department thought the farm, with all improvements, was worth about $490 per acre before the taking and that the property remaining after the taking would bring about $462 per acre. The landowners' witnesses put the value at $800 to $850 per acre before the taking, and only about $671 to $757 afterward. The jury's findings amounted to a "before" average of $730 per acre, and an "after"

average of about $632 per acre. The question becomes whether the evidence supports the substantial reduction in market value. The witnesses for the landowners did not detail any reasons for their marked reduction in the after value of the property.

If it were deemed that the entire 6.72-acre tract was taken along with the 5.71 acres taken, the value of land taken would equal $9073.90, using the jury's finding of average acreage value of $730. One of the Department's witnesses testified that the 6.70-acre tract, fronting on the Hambleton Ferry Road, had separate value of $1600 as a rural home site. No witness contradicted that testimony. So, it would seem appropriate to estimate that $1600 should be deducted from $9073.90 in this calculation. The result would be $7473.90 (valuing the 5.71 acres taken at $730 per acre, or $4168.30, and the 6.71 acres as having lost all but $1600 of its former value of $4905.60, at $730 per acre). Using this analysis, an additional $5526.10 in reduced value is needed to support the $13,000 verdict. Since it is being considered as if 12.43 acres had been taken, there remain the 100.3 acres, less 12.43, or 87.87—say 88 acres—with the original improvements undisturbed. This means that every acre of the remaining 88 acres has suffered a reduction in value of just over $62 per acre, notwithstanding the fact that all of the improvements remain on the 88 acres and the bare land taken has been valued equally with the untaken, improved land. Of course, that could be the situation. The difficulty is that there is no rational basis in the record to support such a conclusion.

It is true that qualified appraisal witnesses may express opinions of value without assigning any foundation. However, when no circumstance appears which reasonably indicates a basis for a material reduction in the per-acre value of the remaining land, the mere *ipse dixit* of even an expert will not suffice to support a verdict reflecting such an unexplained reduction in after value. Cf. Commonwealth,

Department of Highways v. Watson, Ky., 465 S.W.2d 52; Commonwealth, Department of Highways v. Brent, Ky., 436 S.W. 2d 781; Commonwealth, Department of Highways v. Tyree, Ky., 365 S.W.2d 472.

The witnesses for the landowners referred to sales they deemed "comparable" as affecting their estimates of "before" value, but did not explain why those same evaluations were inapposite with respect to "after" value. Since there was insufficient evidence of probative value to support the verdict, the judgment must be reversed for a new trial. All other questions are reserved without decision.

The judgment is reversed.

All concur.