Kelly B. ZANDERS, Plaintiff–Appellant,

v.

NATIONAL RAILROAD PASSENGER CORPORATION, Defendant–Appellee.

No. 88–3475.

United States Court of Appeals,
Sixth Circuit.

Argued March 31, 1989.

Decided March 21, 1990.

1128

Alan Belkin (argued), Shapiro, Turoff, Gisser & Belkin, Cleveland, Ohio, for plaintiff-appellant.

Harry A. Hanna, Michael J. Frantz, Thompson, Hine & Flory, Cleveland, Ohio, Rayna G. Eller, Michael F. Rosenblum (argued), Mayer, Brown & Platt, Chicago, Ill., and Kathleen J. Raynsford, Nat. R.R. Passenger Corp., Law Dept., Washington, D.C., for defendant-appellee.

Before BOGGS, Circuit Judge, and ENGEL,* Senior Circuit Judge, and BALLANTINE,** District Judge.

ENGEL, Senior Circuit Judge.

Plaintiff Kelly B. Zanders appeals a summary judgment of the United States District Court for the Northern District of Ohio granted in favor of Defendant National Railroad Passenger Corporation (Amtrak). Zanders claims that Amtrak retaliated against her in violation of Title VII of the Civil Rights Act of 1964 when it sued her in Ohio state court, seeking to enforce a termination agreement executed by her and Amtrak.

The central issue in this appeal is whether the district judge correctly gave preclusive effect to an Ohio state court determination that a former employee's post-termination agreement prohibited improper disclosure of confidential information. Not infrequently, employers enter into post-employment agreements whereby, for separate consideration, the departing employee agrees not to disclose confidential information the employee acquired in the course of employment. While most often such agreements concern trade secrets and corporate strategy, the agreement construed by the Ohio court here concerned information which the plaintiff had gained as part of the employer's staff involved in the processing and defense of discrimination claims against the employer. While absolute bans against disclosure might, we concede, run afoul of both the language and intent of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, *et seq.*, such an absolute ban was not contained in the agreement presented to the Ohio court and to the district court. Instead, the Ohio court construed the agreement to prohibit disclosure unless the employer was accorded an opportunity to interpose any rights it might have to assert the attorney-client or work product privileges. A contract so limited, the Ohio court held, violated neither Ohio nor federal public policy. The Ohio court, therefore, enjoined the premature disclosure, without

court supervision, of the allegedly confidential information.

The district court, applying the principles of preclusion of *Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982), held itself bound to respect the state court's finally adjudicated determination on the public policy issue. The district court also concluded that there was no evidence to support Zanders' claim, under 42 U.S.C. § 2000e–3, that the employer retaliated against her by filing its suit in state court to prevent disclosure.

### I.

Between 1977 and December 4, 1984, Amtrak employed Kelly Zanders as an assistant on equal employment opportunity and affirmative action matters. Under the supervision of Amtrak attorneys, she investigated and drafted answers to employment discrimination complaints. In this position, Zanders acquired confidential information concerning the discrimination claims filed against Amtrak; much of this information is subject to the attorney-client and work product privileges.

On December 4, 1984, Zanders resigned her position and executed a termination agreement with Amtrak: in consideration of $14,500, Zanders agreed not to disclose confidential information acquired in the course of her employment. On August 16, 1986, the attorney representing Amtrak employee Rita Samuiloff, who had filed an employment discrimination claim against Amtrak, notified the Amtrak legal department that Zanders had agreed to appear as a witness for Samuiloff at a hearing to be held before the Illinois Human Rights Commission. Zanders likewise executed an affidavit in another discrimination case indicating that she was willing to testify on behalf of the complainant.

Concerned that Zanders would disclose confidential information gained in the course of her employment, on August 19,

---

* Honorable Albert J. Engel assumed senior status effective October 1, 1989.

** Honorable Thomas A. Ballantine, Jr., United States District Judge for the Western District of Kentucky, sitting by designation.

1986, Amtrak sued Zanders in the Court of Common Pleas of Cuyahoga County, Ohio, seeking to enjoin Zanders from violating the termination agreement. After trial on December 9–10, 1986, the Court of Common Pleas held that the agreement did not violate public policy, that Zanders had breached the termination agreement, and that she was likely to breach it in the future. The court thus enjoined Zanders from using information acquired in the course of her employment to assist anyone raising an employment discrimination claim against Amtrak. The court specifically excepted participation "required by law in a proceeding in which Amtrak has the opportunity to assert any applicable claim of privilege[.]"

On November 4, 1986, Zanders instituted this action in the United States District Court for the Northern District of Ohio, alleging that: (1) Amtrak, in violation of section 704(a) of Title VII of the Civil Rights Act of 1964, initiated its state court suit against Zanders to retaliate against her for having assisted Samuiloff in her state employment discrimination proceeding, and (2) the termination agreement violated public policy and therefore was void. Zanders did not return or tender the return of the $14,500 consideration she had been paid under her contract.

On April 22, 1988, on cross motions for summary judgment, United States District Judge Ann Aldrich held that (1) there was no evidence that Amtrak either acted in bad faith or harassed Zanders when it sued to enforce the termination agreement and (2) the Court of Common Pleas' holding that the termination agreement did not violate public policy was *res judicata*. The district court thus granted summary judgment for Amtrak. Zanders appeals. We affirm.

## II.

Judge Aldrich did not independently evaluate Zanders' claim that the termination agreement violated public policy and was therefore invalid; instead, she held that this claim was foreclosed as *res judicata*, given the Court of Common Pleas' holding that the agreement did not violate public policy. In the state court litigation, Zanders defended on the ground that the agreement violated public policy. Judge Aldrich held that the state court rejected this contention when it stated: "On December 4, 1984, Zanders terminated her employment with Amtrak pursuant to the provisions of a termination agreement which this court finds consistent with public policy...."

■ Under the Supreme Court's interpretation of 28 U.S.C. § 1738,[1] unreviewed state administrative proceedings are not entitled to full faith and credit by federal courts and thus have no preclusive effect upon subsequent Title VII litigation in the federal courts. *University of Tennessee v. Elliott*, 478 U.S. 788, 796, 106 S.Ct. 3220, 3225, 92 L.Ed.2d 635 (1986). In contrast, a state court judgment must be accorded by federal courts the same preclusive effect it would be accorded by the courts of the State. This rule of general application has been upheld specifically in the context of Title VII litigation. *See Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982) (state court judgment on state discrimination charge entitled to preclusive effect on subsequently filed Title VII action alleging same form of discrimination).

Noting that "Congress must 'clearly manifest' its intent to depart from § 1738," *id.* at 477, 102 S.Ct. at 1895, the Supreme Court held in *Kremer* that "the legislative debates surrounding the initial passage of Title VII in 1964 and the substantial amendment adopted in 1972 plainly do not demonstrate that Congress intended to override the historic respect that federal courts accord state court judgments." *Id.* at 471–72, 102 S.Ct. at 1892–93. "Nothing in the legislative history ... suggests that Congress considered it necessary or desirable to provide an absolute right to

1. 28 U.S.C. § 1738 provides: "The records and judicial proceedings of any court of any such State.... shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State...."

relitigate in federal court an issue resolved by a state court. While striving to craft an optimal niche for the States in the overall enforcement scheme, the legislators did not envision full litigation of a single claim in both state and federal forums.... We conclude that neither the statutory language nor the congressional debates suffice to repeal § 1738's longstanding directive to federal courts." *Id.* at 473–74, 476, 102 S.Ct. at 1893–94. "[T]here is no 'affirmative showing' of a 'clear and manifest' legislative purpose in Title VII to deny res judicata or collateral estoppel effect to a state court judgment affirming that a claim of employment discrimination is unproved...." *Id.* at 485, 102 S.Ct. at 1899. The Supreme Court held that the district court must apply preclusion principles to Kremer's Title VII claims since he had previously filed a state discrimination claim and unsuccessfully pursued his claim in state court.

Following *Kremer*, several Courts of Appeals have explicitly held that state court judgments, in accordance with state law, are entitled to preclusive effect in subsequent Title VII actions. *See, e.g., Hirst v. California*, 770 F.2d 776 (9th Cir.1985) (Title VII suit barred by prior state court judgment); *Burney v. Polk Community College*, 728 F.2d 1374 (11th Cir.1984) (same); *Wakeen v. Hoffman House, Inc.*, 724 F.2d 1238 (7th Cir.1983) (same); *see also Trujillo v. County of Santa Clara*, 775 F.2d 1359 (9th Cir.1985) (Title VII action barred even though it was the employer who appealed state administrative decision and invoked state court forum); *Gonsalves v. Alpine Country Club*, 727 F.2d 27 (1st Cir.1984) (same).

Some courts have carved out only minimal exceptions to the preclusive effect of state court judgments in subsequent federal Title VII suits: (1) when state proceedings are not adequate for presentation of the discrimination claims [2] or (2) when there is a difference between the underlying purposes and/or remedies of Title VII and the state statute at issue in the prior state proceeding. *See Patzer v. Board of Regents*, 763 F.2d 851 (7th Cir.1985) (Title VII action seeking supplemental remedies unavailable under state statute); *Ross v. Communications Satellite Corp.*, 759 F.2d 355 (4th Cir.1985) (Title VII and state unemployment statute have different procedures and purposes). Neither possible exception applies to the facts here.

*Kremer*, however, is at least potentially distinguishable from this case in two respects. In *Kremer*, the state court claim was a discrimination claim and was brought by the employee; here, the issue raised in the state court case was brought by the previous employer, Amtrak, and did not involve a discrimination claim. We believe it is necessary to address these distinctions here.

In rejecting plaintiff's claim in *Kremer*, the Supreme Court observed: (1) that "Congress agreed that the States should play an important role in enforcing Title VII, but also felt that the federal system should defer only to adequate state laws," 456 U.S. at 472, 106 S.Ct. at 1893; (2) that Congress searched for the proper "niche for the States in the overall enforcement scheme...," *id.* at 474, 106 S.Ct. at 1894; and (3) that "[s]tate antidiscrimination laws ... play an integral role in the congressional scheme." *Id.* at 468–69, 106 S.Ct. at 1890–91. Thus, it can be argued that the Court's holding was limited to situations where a state employment discrimination claim was filed prior to a federal Title VII claim. In this context, deference to the judgment of a state court would be proper, given the State's role in enforcing its own anti-discrimination laws and the State's role in an overall congressional scheme designed to eliminate discrimination. Zanders, however, has not argued that Congress explicitly rejected section 1738's applicability to this case, and no legislative history has been found which would indicate that the situation here would require an exemption from the "full faith and credit" command of 28 U.S.C. § 1738.

---

2. *See, e.g., Bottini v. Sadore Management Corp.*, 764 F.2d 116 (2d Cir.1985); *Jones v. City of Alton*, 757 F.2d 878 (7th Cir.1985).

In *Kremer,* the Court likewise seemed to emphasize that the plaintiff was bound by his own litigation strategy because he was the master of his own destiny in pursuing his discrimination charges. Although discrimination charges must be pursued in the appropriate state agency before the charges may be processed by the Equal Employment Opportunity Commission (EEOC), "[n]o provision of Title VII requires claimants to pursue in state court an unfavorable state administrative action.... " *Id.* at 469, 106 S.Ct. at 1891. Therefore, a claimant may seek review by the EEOC, which may issue a right-to-sue letter, rather than resorting to the state courts. *Kremer* can be read, therefore, as holding that one reason for according preclusive effect to the judgment of the state court is that it is the forum chosen by the plaintiff. Here, Zanders was brought into state court on the initiative of Amtrak. That the Supreme Court in *Kremer* did not consider this distinction controlling, however, is indicated by its determination that the finality of state court judgments should not "depend upon which side prevailed in a given case." 456 U.S. at 470, 106 S.Ct. at 1891 (footnote omitted). Several courts have cited this language in holding that preclusion principles apply even when the employer appeals the state administrative decision. *See, e.g., Trujillo,* 775 F.2d at 1364; *Gonsalves,* 727 F.2d at 29.

Whatever else might be claimed for the pervasive command of section 1738, it cannot be doubted that "final responsibility for enforcement of Title VII is vested with federal courts." *See Alexander v. Gardner–Denver Co.,* 415 U.S. 36, 44–45, 94 S.Ct. 1011, 1017–18, 39 L.Ed.2d 147 (1974). Although the Supreme Court has explicitly declined to decide whether Title VII claims can be brought only in federal court, *Kremer,* 456 U.S. at 479 n. 20, 102 S.Ct. at 1896 n. 20, some courts have held that the federal judiciary retains exclusive jurisdiction over Title VII claims. *Bradshaw v. General Motors Corp.,* 805 F.2d 110, 112 (3d Cir.1986); *Valenzuela v. Kraft, Inc.,* 739 F.2d 434, 436 (9th Cir. 1984). If we accept this line of authority, a state court may not limit the reach of Title

VII. Under *Gardner–Denver,* Title VII is a federal statutory scheme entrusted to the care of the federal judiciary. This principle, however, has not been applied to relieve the federal court of its duty to follow normal rules of issue preclusion.

More recently, the Supreme Court has expressly held that "even a finding of exclusive jurisdiction usually 'will not prevent a state court from deciding a federal question collaterally.' " *Hathorn v. Lovorn,* 457 U.S. 255, 266, 102 S.Ct. 2421, 2428, 72 L.Ed.2d 824 (1982); *Gulf Offshore Co. v. Mobil Oil Corp.,* 453 U.S. 473, 483 n. 12, 101 S.Ct. 2870, 2878, n. 12, 69 L.Ed.2d 784 (1981). State courts often are allowed "to decide 'collaterally' issues that would be reserved for the federal courts if the cause of action arose under federal law." *Hathorn,* 457 U.S. at 267 n. 18, 102 S.Ct. at 2429 n. 18.

▮ We therefore conclude that we must view *Kremer* in light of *Hathorn* and *Gulf Offshore, supra.* So viewing it, we conclude that these cases indicate that exclusive jurisdiction in federal courts over Title VII litigation does not prevent a state court from hearing Zanders' public policy defense. Further, we believe that *Kremer* required the district judge to apply the state principles of *res judicata* and collateral estoppel to the extent they are recognized by the state courts of Ohio. The ultimate question therefore is whether the district court correctly applied Ohio's own preclusion principles.

### III.

▮ Under Ohio law, a point of law at issue in a former action and determined by a court of competent jurisdiction may not be drawn into question in a subsequent action between the same parties or their privies. *See, e.g., Scholler v. Scholler,* 10 Ohio St.3d 98, 462 N.E.2d 158 (1984). Collateral estoppel, or issue preclusion, precludes relitigation of an issue only when that identical issue was decided in a former case. *Goodson v. McDonough Power Equipment, Inc.,* 2 Ohio St.3d 193, 443 N.E.2d 978, 983 (1983).

■ There is no dispute that both Zanders and Amtrak were parties to the state court litigation. Moreover, as Judge Aldrich observed, the state court rejected Zanders' claim that the agreement violates public policy. Although Zanders has argued that the state court's decision failed to indicate specifically that the agreement did not violate Title VII public policy, Judge Aldrich also rejected that argument, holding that the state court's holding concerned the validity of the agreement under federal policy: "there is no indication that the Ohio court did not consider and reject Zanders' defense that the contract was void as against Title VII public policy. Zanders' affirmative defense did not refer to Ohio public policy, but only to Title VII public policy."

Zanders framed her public policy defense before the state court as follows: "The provisions of the Termination Agreement plead [sic] by plaintiff violate federal law and public policy and cannot be the basis for equitable relief." In rejecting the public policy claim, the state court merely stated that the agreement was "consistent with public policy...." This court's review of the scope of Zanders' affirmative defense and the state court holding, however, satisfies us that the issue was decided by the state court.

■ If we were compelled to address Zanders' public policy argument, we would nevertheless find it without merit. Employment severance contracts, where a departing employee agrees not to compete or to reveal trade or other company secrets learned in the course of employment for separate consideration, are not uncommon and are not prohibited by Title VII or comparable state law provisions. Zanders has provided no authority to the contrary. To the extent such a contract might potentially collide with rights protected under such acts, we note that the severance contract at issue here expressly provides that the agreement would not bar her participation in proceedings when "required by law":

(5) *In consideration of the foregoing,* you, your successors and assigns, hereby release and discharge the company from any and all liabilities and claims of any kind or nature that you may have had or may now have by virtue of any federal, state or municipal statute, regulation or ordinance and from all debts, demands, actions, suits, agreements, damages and any and all claims, demands, and liabilities whatsoever of every name and nature both in law and in equity against the Company, and agree not to file any claim or join in a claim as an individual or as a member of a class in any other state or federal court or agency relating to your employment with Amtrak prior to this date, *and agree not to assist in any litigation or investigation against the corporation, except as required by law,* and further agree not to hereafter apply for employment or be employed by Amtrak or any of its affiliated, subsidiary, or successor companies.

(6) Both you and the Company further agree that neither will make public or publicize in any manner, and will keep confidential, the terms, nature or scope of this Agreement or the fact that such Agreement exists. You also agree not to disclose to anyone any information obtained in the course of your employment and related to the functions of your position.

[Emphasis supplied.] The state court fully addressed this provision in its order:

3. In light of (a) the privileged and confidential nature of the communications in which Zanders participated during the course of her employment at Amtrak, (b) the evidence at trial that Zanders has breached the agreement and that a reasonable apprehension exists that she will breach the agreement in the future and (c) the for [sic] irreparable harm which would occur as a result of any future breach: Zanders shall not, except as may be required by law in a proceeding in which Amtrak has the opportunity to assert any applicable claim of privilege, disclose to anyone any information obtained in the course of her employment or related to the function of her position at Amtrak....

This [court's] Paragraph 3 is not intended to impede the discovery of facts

in any judicial or administrative proceeding, but rather only to provide Amtrak with the opportunity to raise and obtain a ruling on any claim of privilege that may be applicable because of the confidential nature of the communications in which Zanders participated in the course of her employment at Amtrak. This Paragraph 3 seeks to achieve this purpose by ensuring that Zanders conveys information with respect to any matter involving her employment at Amtrak only in a formal proceeding, pursuant to subpoena or other process, at which Amtrak is present and is in a position to assert its rights under the attorney-client and work product privileges....

It is apparent that Ohio, like most states, recognizes the general rules of attorney-client and work product privileges. Ohio has codified the attorney-client privilege. *See* Ohio Rev.Code Ann. § 2317.01 (Baldwin 1988); *see, e.g., Waldmann v. Waldmann*, 48 Ohio St.2d 176, 358 N.E.2d 521 (1976); *Taylor v. Sheldon*, 172 Ohio St. 118, 173 N.E.2d 892 (1961). Ohio also has restricted access to an attorney's work product. *See* Ohio Civ.R. 26(B)(3); *see, e.g., Aetna Casualty & Surety Co. v. Desprez*, No. 52634, Slip Op., 1987 WL 6120 (Ohio Ct.App., Feb. 5, 1987). Thus, with the protective language so carefully incorporated in Zanders' non-disclosure contract, we see nothing in the contract which suggests that it is invidious or otherwise violates Ohio or federal public policy.

Accordingly, because Zanders and Amtrak were parties to the prior action and that the public policy issue was determined by the state court, the district judge did not err in concluding that the Court of Common Pleas' determination was entitled to full faith and credit and was properly accorded preclusive effect.

## IV.

While the district court dismissed the plaintiff's public policy claim as precluded by the state court litigation, the court granted summary judgment on the retaliation claim, brought under 42 U.S.C. § 2000e-3. Section 704(a) of Title VII, 42 U.S.C. § 2000e-3(a), provides:

It shall be an unlawful employment practice for an employer to discriminate against any of his [or her] employees ... because he [or she] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

In evaluating whether Amtrak is entitled to summary judgment, it is necessary to evaluate the evidence in light of the evidentiary burdens placed on the parties in the action. "[I]n ruling on a motion for summary judgment, the judge must view the evidence presented through the prism of the substantive evidentiary burden." *Anderson v. Liberty Lobby*, 477 U.S. 242, 254, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986). Determination of whether a given factual dispute requires submission to a jury must be guided by the substantive evidentiary standards that apply to the case. *Id.* at 255, 106 S.Ct. at 2513.

■ In a retaliation claim, a plaintiff alleges that she has been mistreated for engaging in protected activity, and that the employer's motivations are therefore illicit. Thus, a retaliation claim is analogous to an intentional discrimination claim, or "disparate treatment" claim, where the employee must demonstrate the employer's discriminatory intent; the sequence and burden of proof applicable to disparate treatment cases are applicable to retaliation claims. *See Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir.1985); *Williams v. Boorstin*, 663 F.2d 109, 116 (D.C.Cir.1980); *Womack v. Munson*, 619 F.2d 1292, 1296 (8th Cir.1980).

In *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981), the Supreme Court discussed the allocation of evidentiary burdens in a "disparate treatment" discrimination case: "the plaintiff has the burden of proving by a preponderance of the evidence a prima facie case of discrimination" after which, "if the plaintiff succeeds in proving a prima facie case, the burden shifts to the defendant 'to articulate some legitimate, nondiscriminatory reason'" for the employer's action, after which, "should the defendant carry this burden, the plaintiff must then have an

opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Id.* (citations omitted).

■ In retaliation cases brought under § 704(a), the order and allocation of proof is similarly articulated:

> [T]he plaintiff must show: first, protected participation or opposition under Title VII known by the alleged retaliator; second, an employment action or actions disadvantaging persons engaged in protected activities; and third, a causal connection between the first two elements, that is, a retaliatory motive playing a part in the adverse employment actions.

*Grant v. Bethlehem Steel Corp.*, 622 F.2d 43, 46 (2d Cir.1980). A causal link requires the plaintiff to proffer evidence "sufficient to raise the inference that her protected activity was the likely reason for the adverse action." *Cohen v. Fred Meyer, Inc.*, 686 F.2d 793, 796 (9th Cir.1982). *Cf. Cooper v. City of North Olmsted*, 795 F.2d 1265, 1272 (6th Cir.1986) (claim of retaliatory discharge requires plaintiff to prove that she was engaged in protected activity, that she was subject to adverse employment action, and that there is a causal link between protected activity and adverse action of employer); *Jackson v. RKO Bottlers of Toledo, Inc.*, 743 F.2d 370, 375 (6th Cir.1984) (same). If the "employer produces a legitimate non-discriminatory explanation, the employee bears the ultimate burden of proving retaliation by demonstrating that the employer's proffered reason is pretextual." *Ross*, 759 F.2d at 365; *Womack*, 619 F.2d at 1296. "If no legitimate non-discriminatory reason for the defendant's actions exists, or if the plaintiff can show any excuse offered to be merely a pretext for discrimination, then Title VII liability results." *Hamilton v. Rodgers*, 791 F.2d 439, 442 (5th Cir.1986); *see Cohen, supra*, 686 F.2d at 796. *Cf. Price Waterhouse v. Hopkins*, —— U.S. ——, 109 S.Ct. 1775, 1787–88, 104 L.Ed.2d 268 (1989) (in "mixed motive" employment discrimination case under § 2000e–2, where discrimination requires adverse action "because of" race or gender, if "gender played a motivating part in [the] employment decision, the defendant may avoid a finding of liability only by proving that it would have made the same decision even if it had not allowed gender to play such a role") (plurality); *King v. Laborers Local 818*, 443 F.2d 273, 279 (6th Cir.1971) (in "mixed motive" discrimination case, Title VII relief not warranted if employer has "lawful nondiscriminatory motivations for his actions" which led to the actions, even though the same result would have occurred for the illicit reasons).

■ Zanders argues that she properly alleged that she was sued because she participated in Samuiloff's proceedings before the Illinois Human Rights Commission. Assuming this is sufficient to shift the burden of production to Amtrak, Amtrak clearly has articulated a legitimate reason for suing Zanders in state court: enforcing its contractual right to protect confidential information from improper and unauthorized disclosure.

■ Thus, the burden once again falls upon Zanders to demonstrate that this articulated reason is a pretext for the action undertaken by Amtrak. Zanders argues that the filing of the state court suit shortly after her contact with Samuiloff demonstrates some causal link between Zanders' protected activity and the allegedly "retaliatory" suit in state court. Amtrak does not deny that it filed the state suit only because Zanders planned to testify in the state discrimination proceeding. Nevertheless, Zanders has failed to demonstrate, in light of the release agreement, that Amtrak's action was the result of a "retaliatory motive playing a part in the adverse employment actions." *Grant v. Bethlehem Steel Corp.*, 622 F.2d at 46. Zanders has failed to demonstrate *why* Amtrak's justification is pretextual, that is, *why* Amtrak's action is illegal "discrimination" within the meaning of § 2000e–3(a). In other words, she has failed to demonstrate that Amtrak's actions are not motivated by the reason proffered by Amtrak, a reason specifically found by Ohio's courts to be consonant with public policy.

Zanders essentially argues for a broad construction of § 2000e–3(a): any action taken by an employer after an individual participates in an employment hearing must perforce amount to unlawful "discrimination." Moreover, she seeks to establish this discrimination based solely upon the fact that the employer filed the state suit against her so that it could participate in any hearing. As Judge Aldrich points out, however, Zanders failed to produce any evidence to show that Amtrak sued her in state court either in bad faith or with an intent to harass her. On appeal, Zanders has likewise failed to articulate and demonstrate Amtrak's invidious motives. That Amtrak prevailed in its state court suit is persuasive proof the state suit was not filed for an improper purpose.

Viewed in light of the evidentiary burdens in this case, and given Zanders' burden to prove that the state lawsuit was a means of retaliating against her, Zanders has failed to present any evidence which would tend to show that Amtrak's articulated reason was pretextual. The district court correctly granted summary judgment for Amtrak on this claim.

AFFIRMED.