**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

―――――――――

No. 13-4306

―――――――――

*KAYUNTA JOHNSON-WINTERS,
                                        Appellant

v.

REDNER'S MARKET INC.

*(Amended pursuant to the Court's order dated 1/21/2015)

―――――――――――――――

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(District Court No.: 5-09-cv-05645)
District Judge:  Honorable Lawrence F. Stengel

―――――――――――――――

Argued on March 30, 2015

Before:  RENDELL, CHAGARES and JORDAN, <u>Circuit Judges</u>

(Opinion filed: April 22, 2015)

Michael J. Quirk, Esq.  **(ARGUED)**
Gerald J. Williams, Esq.
Williams, Cuker & Berezofsky
1515 Market Street
Suite 1300
Philadelphia, PA 19102

        Counsel for Appellant Kayunta Johnson-Winters

Jeffrey R. Elliott, Esq. **(ARGUED)**
Michael M. Monsour, Esq.
Kozloff Stoudt
2640 Westview Drive
Wyomissing, PA 19610

Counsel for Appellee Redner's Market, Inc.

O P I N I O N*

**RENDELL**, Circuit Judge:

Kayunta Johnson-Winters, as succession representative of appellant Sammy Perry, contends that the District Court erred in granting summary judgment to appellee Redner's Markets, Inc., with regard to Perry's employment discrimination claims under Title VII and the Pennsylvania Human Relations Act (PHRA).[1] Perry, an African-American man, worked at a Redner's Markets grocery store in Lansdale, Pennsylvania. We conclude that there exists a genuine issue of material fact as to whether Redner's took adverse employment actions against Perry. We also conclude that Perry has adduced sufficient evidence for a reasonable jury to find that Redner's adverse actions against him were taken in retaliation for his protected activity of filing a race discrimination complaint. We will vacate the District Court's grant of summary judgment and remand.

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.
[1] We exercise plenary review over a district court's grant of summary judgment. In doing so, "[w]e view all evidence and draw all inferences in the light most favorable to the non-movant, affirming if no reasonable jury could find for the non-movant." *Madison v. Res. for Human Dev., Inc.*, 233 F.3d 175, 180 (3d Cir. 2000).

## I.  Background

Perry began his job as a night-shift stock clerk in 2003.  In April 2004, Perry complained to Brian Golden (at that time Assistant Store Director) that African-American employees were having their hours cut, were being paid less than white employees, and were being forced to work on weekends.  When Perry was dissatisfied with Redner's response to his complaint, he filed a race discrimination complaint with the Pennsylvania Human Relations Commission (PHRC) in November 2004, which the PHRC investigated beginning in late 2004.  Although unmentioned by the District Court, Perry testified to a pattern of antagonism after he filed his race discrimination complaint.  For example, Perry testified that Golden treated him poorly while the investigation was ongoing, including ordering him to do additional work that was outside his job description.  Perry's brother also averred that Golden told a Redner's employee that "just because Sam Perry made that complaint doesn't mean I can't fire his ass."  (App. 364.)

In December 2004, one month after Perry filed his PHRC complaint, Perry injured his back at work and went on disability leave.  His injury was significant and required surgery, and he was out of work for over a year and a half, from January 2005 through late August 2006, at which time he resumed light-duty, day-shift work.  Less than two weeks later, Golden became Store Director of the Lansdale store.  Perry was then arrested on September 22, 2006—less than a month after he returned to work—for allegedly stealing and using a customer's credit card, as we discuss below.[2]

---

[2] Following Perry's termination from Redner's, he filed a retaliation complaint with the PHRC.  The PHRC investigated, and on August 4, 2008, issued findings and a

## II. Analysis

In order to prevail on a claim for retaliation under Title VII, an employee must prove that (1) he engaged in a protected employment activity, (2) his employer took an adverse employment action after or contemporaneous with the protected activity, and (3) a causal link exists between the adverse action and the protected activity. *Andreoli v. Gates*, 482 F.3d 641, 649 (3d Cir. 2007). If the plaintiff is successful in proving a prima facie case, the burden of producing evidence then shifts to the defendant to establish a "legitimate, non-retaliatory reason for the adverse employment action." *Marra v. Phila. Hous. Auth.*, 497 F.3d 286, 300 (3d Cir. 2007). If the defendant is successful, the burden returns to the plaintiff to establish that the proffered reason is pretextual. *Id.*[3]

### A. Adverse Action

#### 1. Evidence Sufficient to Allow Reasonable Jury to Find that Perry Was Falsely Identified as Committing Theft

The District Court accepted Redner's version of events *in toto*, stating that "Redner's complied with a valid request from the police to identify employees on a videotape at Register #9 on a certain date and time at its Lansdale store." (App. 18.)

However, Perry has pointed to several pieces of evidence indicating that the police could not have gotten the times and register numbers for the unauthorized transactions from the victim; rather, that information had to have come from someone at the store

---

determination that "probable cause exists to credit the Complainant's allegations that he was wrongfully arrested and terminated from his position for opposing an act made unlawful by the Pennsylvania Human Relations Act . . . ." (App. 794.)

[3] Perry's claims under the PHRA are subject to the same analytical framework as those under Title VII, and so we do not analyze those claims separately. *See Marra*, 497 F.3d at 300.

4

itself.  On September 14, 2006, a woman reported to the Montgomery Township Police Department ("MTPD") that her credit card was missing, and that she had last used it at the Lansdale Redner's store on September 6.  It was then used at the same store on September 7, without authorization.  According to Perry, the only information the MTPD had about the stolen card was the credit card number, the store where the card was used, the date, and the amount of the purchase.  The MTPD did not have a record of the exact time of the transactions or the register where those transactions occurred.

Redner's own electronic journal transaction ("EJT") report identified that the unauthorized transactions were made at register number nine and took place at *8:15 a.m.*, 1:12-1:13 p.m., and 2:10-2:16 p.m.  Nevertheless, Redner's supplied the police with video footage of transactions that took place at *8:30 a.m.*, 1:12-1:13 p.m., and 2:10-2:16 p.m.  Of those three, only the 8:30 a.m. video shows Perry making a purchase of cigarettes and a cup of coffee, for an amount that did not correspond with the amount of the first unauthorized credit card charge.  Indeed, the EJT report stated that the unauthorized transaction was for a Giant Slim Jim, and not coffee and cigarettes.  There is conflicting evidence as to whether Golden or shift security supervisor Cory Deily indicated that it was Perry in the video.

Furthermore, the District Court's conclusion that Redner's "communicated Miss Elam's confession and her exoneration of Mr. Perry to the police" tells only part of the story.  (App. 10.)  Perry was arrested on Friday, September 22, 2006.  That same day, the MTPD contacted Redner's because the videos of the two afternoon transactions showed

5

that the card was being used by a woman. Perry points to evidence showing that Detective Thomas then brought the woman in the videos to Deily's attention.

Deily and Golden questioned Redner's employee Liana Elam about the credit card transactions. After Elam confessed that she and her roommate had been the ones to use the credit card, Elam says that Deily and Golden repeatedly pressured to her say that Perry was somehow involved in the theft. In her affidavit, she stated that "it seemed like they wanted it to be Sam Perry no matter what I told them." (App. 643.) Deily spoke with the MTPD after Elam's confession, and the September 27, 2006 police report of the conversation states that, although Deily acknowledged Perry was not in the second or third videos, "after speaking with [Redner's] corporate lawyers, they are standing by [Perry's] involvement."[4] (App. 395.) The MTPD disagreed that there was sufficient evidence to charge Perry with theft and formally dropped the charges on September 27.

In sum, we believe there is a genuine issue of material fact as to whether someone at Redner's purposefully and maliciously identified Perry in connection with the unauthorized transactions. The record demonstrates that a reasonable jury could find, contrary to the District Court's ruling, that Redner's purposefully gave police the wrong video footage so that the police would identify Perry as the perpetrator in an attempt to implicate him in the crime.

---

[4] It is not clear from the record when Redner's advised the MTPD of Elam's confession, but the police report does not reflect that conversation until September 27.

### 2. Evidence Sufficient to Allow Reasonable Jury to Find that Redner's Terminated Perry on September 22, 2006

The District Court also found that Perry had failed to adduce evidence that Redner's had terminated him on the day of his arrest, and instead agreed with Redner's that Redner's terminated Perry the following Monday for failing to show up to work, thus abandoning his job. On Friday, September 22, 2006, Detective Thomas, Deily, another detective, and a police officer approached Perry while he was working in the store, placed him in handcuffs, and arrested him. Detective Thomas then told Perry, in front of Deily, that he was terminated and that if he set foot in the store again he would be re-arrested.[5] Neither Deily nor anyone else at Redner's ever informed Perry that he was free to return to work. Redner's maintains that even though Perry was arrested on Friday and told not to return, he was, in fact, free to return to work on the following Monday, and that when Perry failed to show up, Redner's fired him for abandoning his job.

Redner's files contain conflicting information regarding the date and reason for Perry's separation from the company. A Redner's employee stated in connection with Perry's claim for unemployment benefits that "Sammy was escorted by both our loss Prevention security and the local Police from our premises. If this happens, an employee

---

[5] Redner's urges that this statement by Detective Thomas had no effect because it was not uttered by a Redner's employee. We considered a similar factual situation in *Burton v. Teleflex Inc.*, 707 F.3d 417 (3d Cir. 2013). In that case, we vacated the district court's grant of summary judgment on a portion of the plaintiff's claims, holding that there was a genuine dispute of material fact as to whether the plaintiff, Burton, resigned or was terminated. Of particular relevance, we noted that, "[o]nce clients were notified of Burton's alleged resignation, she could reasonably have concluded that Teleflex had fired her, leaving her no ability to contest her separation and return to her position." *Id.* at 429. In doing so, we recognized that the reasonable belief of the employee is relevant to determining whether he or she had resigned or had been terminated.

I'm sure realizes they have been terminated—it is a done deal." (App. 678.) In addition, Redner's interrogatory responses stated that if Perry had tried to return to work, "he would have been advised that his employment was terminated." (App. 694-95.) Golden also stated that Deily had notified Perry that he was suspended pending a determination from human resources, and the parties do not dispute that Perry never received word from human resources that he was free to return.

In addition, documents produced during discovery indicate that *Redner's* considered Perry to have been terminated on September 22, 2006—the day of his arrest— and not September 25, when Perry allegedly abandoned his job by not showing up for work. For example, a Redner's "Punch Correction Form" dated September 24, 2006, states that Perry's punch card for September 22, 2006, was being corrected, and lists "Terminated" as the reason for correction. (App. 676.) Again, this document is dated September 24, 2006, *one day before* Redner's insists that Perry was allegedly fired for failing to show up for work.[6]

The evidence further indicates that Deily, a Redner's security supervisor, stood by silently while a police officer informed Perry that he was fired and would be arrested if

---

[6] Other documents indicate that Perry was fired for being a no-show on September 25, 2006, and indeed, this was the date that Redner's argued to the District Court. The District Court agreed, stating, "The evidence of record demonstrates that Mr. Perry abandoned his job by not working his scheduled shift on September 25, 2006." (App. 18.) However, company policy clearly indicated that an employee would be fired for job abandonment only if he or she failed to show up for two days in a row. Accordingly, pursuant to company policy, Perry *could not have been fired* for job abandonment before September 26, 2006.

he attempted to return to the store.[7]  In addition, many documents produced by Redner's contain conflicting information regarding Perry's date of termination, and several list his date of termination as September 22—the date he was arrested.  Accordingly, Perry has raised a genuine issue of material fact as to whether Redner's committed an adverse act against him by terminating him on September 22, 2006.

**B. Causal Link**

Perry has adduced sufficient evidence for a reasonable jury to find that the alleged adverse actions were taken against him in retaliation for his previous complaints of race discrimination.  Accordingly, the District Court erred in concluding that, even if Perry had been able to establish an adverse action, Perry failed to demonstrate causation, as he had not shown that the protected activity and the adverse action were connected by temporal proximity or by a record of ongoing antagonism.

 "[Retaliation] [c]ases in which the required causal link has been at issue have often focused on the temporal proximity between the employee's protected activity and the adverse employment action, because this is an obvious method by which a plaintiff

---

[7] Perry also argues that Detective Thomas could have been acting as an agent of Redner's when he told Perry that he was terminated.  Pennsylvania courts have held that "[w]hether an agency relationship exists is a question of fact for the jury." *Bolus v. United Penn Bank*, 525 A.2d 1215, 1221 (Pa. Super. Ct. 1987).  An agency relationship may be found if there is "(1) express authority directly granted by the principal to bind the principal as to certain matters; or (2) implied authority to bind the principal to those acts of the agent that are necessary, proper and usual in the exercise of the agent's express authority; or (3) apparent authority, *i.e.* authority that the principal has by words or conduct held the alleged agent out as having; or (4) authority that the principal is estopped to deny." *Id*.  Resolving this issue is unnecessary to our conclusion, because we find that there is a genuine issue of material fact as to whether Redner's itself considered Perry terminated on September 22.

9

can proffer circumstantial evidence 'sufficient to raise the inference that her protected activity was the likely reason for the adverse action.'" *Kachmar v. Sungard Data Sys., Inc.*, 109 F.3d 173, 177 (3d Cir. 1997) (quoting *Zanders v. Nat'l R.R. Passenger Corp.*, 898 F.2d 1127, 1135 (6th Cir. 1990)). "[W]here there is a lack of temporal proximity, circumstantial evidence of a 'pattern of antagonism' following protected conduct can also give rise to the inference." *Id*. But "[t]hese are not the exclusive ways to show causation, as the proffered evidence, looked at as a whole, may suffice to raise the inference." *Id.* Thus, we have previously stated that "[i]t is important to emphasize that it is causation, not temporal proximity itself, that is an element of plaintiff's prima facie case, and temporal proximity merely provides an evidentiary basis from which an inference can be drawn. . . . When there may be valid reasons why the adverse employment action was not taken immediately, the absence of immediacy between the cause and effect does not disprove causation." *Id.* at 178.

The record demonstrates a "valid reason" that would explain why Redner's did not retaliate against Perry immediately—namely, that he was not actually at work, and not under Golden's supervision, for the vast majority of the time that passed between his protected activity and the alleged retaliation. Perry was at work for under three months between his November 2004 complaint to the PHRC and the alleged adverse actions. Accordingly, the fact that the alleged adverse action was remote in time from Perry's protected conduct does not necessarily serve to undermine the causal link. *See Porter v.*

10

*Cal. Dep't of Corr.*, 419 F.3d 885, 895 (9th Cir. 2005); *Ford v. Gen. Motors Corp.*, 305 F.3d 545, 555 (6th Cir. 2002).[8]

In addition, evidence that an employer's proffered reasons for taking a particular adverse action are pretextual can also provide support for the prima facie element of causation. *See Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 286 (3d Cir. 2000). Here, Perry has pointed to conflicting evidence presented by Redner's as to why and when Perry was terminated, which suggests that Redner's asserted reason for firing him—job abandonment—was pretextual. *Id.* at 281, 286. Based on this evidence, a reasonable juror could disbelieve Redner's claim that it terminated Perry for job abandonment, and conclude instead that he was fired in retaliation for his protected activity. In sum, Perry has raised a genuine issue of material fact as to whether the adverse actions he alleges were the result of his protected activity.

For the foregoing reasons, we will vacate the District Court's grant of summary judgment and remand for further proceedings consistent with this opinion.

---

[8] Furthermore, a gap of two years does not preclude retaliation as a cause of termination. "The mere passage of time is not legally conclusive proof against retaliation." *Robinson v. Se. Pa. Transp. Auth., Red Arrow Div.*, 982 F.2d 892, 894 (3d Cir. 1993).