## Whitney v. Penick
### Same v. Weedman.
### Same v. Jarrett's Adm'r.

Jan. 26, 1940.

476

Stanley B. Mayer and P. M. Basham for appellant.

Woodward, Dawson & Hobson for appellee Penick.

Charles Leibson and Walls & Kincheloe for appellee Weedman.

L. B. Handley, Sidney L. Williams and Walls & Kincheloe for appellee Jarrett's Adm'r.

Percy Shumate for appellees.

OPINION OF THE COURT BY SIMS, COMMISSIONER—Reversing.

These three actions were filed in the Breckinridge Circuit Court as a result of an accident, which happened on Highway 60 about one mile north of Irvington around 11:30 P. M. on March 11, 1938. Involved in the accident were a wrecker owned and driven by Charles E. Penick, a truck owned by A. M. Whitney and driven by his employee, James E. Clark, and a pleasure car owned and driven by Paul Whitworth.

Penick brought suit against Whitney to recover $17,150 damages for personal injuries, loss of time, medical bills and the damage done his wrecker. Weedman sued Whitney to recover $10,915 for personal injuries and loss of time. J. C. Jarrett, administrator of the estate of Hays Jarrett, deceased, brought suit

against Whitney, Whitworth and Penick, to recover $25,000 for the death of his decedent. The petitions in the several actions contained general allegations of negligence. Whitney's answer in each case was a traverse followed by a plea of contributory negligence, which plea was denied by replies filed. Before trial the action as to Whitworth was dismissed on motion of Jarrett's administrator. On motion of counsel for Penick it was ordered that the three causes be tried together, which trial resulted in separate verdicts in favor of Penick, Weedman, and Jarrett's administrator, against Whitney in the respective sums of $2,381; $2,500; and $4,791. From the judgments entered thereon these appeals are prosecuted, and they will be disposed of in one opinion.

A large truck belonging to Whitney was being driven from Louisville to Henderson by his employee, Clark, accompanied by another employee G. B. Watson, who was a mechanic. Upon reaching Payne's road-house, some five miles north of Irvington on Highway 60, Clark and Watson stopped for some 20 or 30 minutes and there met Penick, a mechanic who had formerly worked for Whitney and with whom they were on friendly terms. The evidence is conflicting as to the drinking indulged in by these three men while in the road-house and as to their degree of intoxication upon leaving it. There was evidence to the effect that each of them was under the influence of intoxicants when they left the road-house, although the three of them denied they were drunk, or under the influence of intoxicants. There is no testimony that Weedman was drinking, and he testified he did not take a drink, but that he saw Penick, Clark and Watson each drink a bottle of beer. Payne, the operator of the road-house, testified that Hays Jarrett drank about as much beer as did Penick.

The truck left Payne's roadhouse traveling towards Irvington with Clark driving and Watson riding in the cab with him. Penick, with Hays Jarrett riding with him in the cab of his wrecker, and with Weedman and Allgood riding behind the cab, back with the crane on the wrecker, followed the truck a minute or two later trailing some 200 feet behind it. When about three miles or more from Payne's road-house, the truck came upon Whitworth, who drove his car out from an abandoned filling station and crossed the highway in front of the truck to get on his right side of the road. Whitworth proceeded towards Irvington in front of the truck at

some 15 or 20 miles an hour, driving on the extreme right of the road with his right wheels on the shoulder. At or near this abandoned filling station, proceeding towards Irvington, the highway is straight for perhaps a mile and as the truck was traveling some 35 miles per hour, it attempted to pass the slow moving Whitworth car almost immediately after it started down the road in front of the truck. Clark testified he had just started to bear to his left to pass Whitworth and his left wheels were some two feet to the left of the center line of the highway when he saw the lights on Penick's wrecker some 200 feet behind him coming up to pass his truck and he immediately turned back to his right. Just as Clark did this the right front wheel of the wrecker struck the left front wheel of the truck and the wrecker was deflected to its left, struck an embankment, or some concrete steps at the entrance of Miss Dempster's home, then shot across the road to the right in front of the truck, knocking down a telephone pole on the right side of the road and came to a stop in a hollow on the right side of the road. The evidence is conflicting as to Penick's speed at the time of the accident; some of the witnesses putting it at 70 or 80 miles per hour, while Penick and other witnesses fixed his speed at 40 to 45 miles per hour.

Penick's version of the accident is that Highway 60 is 18 feet wide at this point and that when he reached the straightaway near the abandoned filling station he pulled to the extreme left of the highway, with his left wheels on the shoulder and drove some 200 feet in this position in attempting to pass the truck. This left a clearance between the truck and his wrecker of about one and a half feet and he was continuously sounding his horn. Just as the front wheels of the wrecker reached the front of the truck, it suddenly turned to the left, hit his right front wheel and the last he remembered was his wrecker was knocked against Miss Dempster's steps or embankment. Jarrett was killed in the collision. Penick and Weedman were seriously injured. Allgood, the two men on the truck, and Whitworth, whose car the truck ran into, were not injured.

There was testimony showing the foot brakes on Penick's wrecker were so defective that he could not stop it in ordinary driving without applying his emergency brake. Penick testified the accident happened so suddenly he did not have time to do anything to avoid it

and he did not remember of even getting his foot off of the accelerator.

The appellant, Whitney, seeks a reversal of the judgments on the following grounds: (1) The court erred in excluding the evidence relative to a whiskey bottle found near the scene of the wreck; (2) the court erred in refusing to give instructions offered by appellant presenting his theory of the case; (3) an improper question was asked Weedman by his attorney suggesting that an offer of settlement was made to his client; (4) improper argument by counsel for appellees.

The court excluded the testimony of defendant's witness, George Wilson, who testified out of the presence of the jury that he saw a half pint whiskey bottle on the side of the road approximately 27 feet from the broken telephone pole about 8 o'clock on the morning after the accident. This bottle had some whiskey in it and Wilson took a picture of it just as it was found with frost still on it. Clearly, Wilson's testimony and the picture he took were properly excluded by the court for the reason no testimony was offered to show that this whiskey belonged to Penick or any occupant of his wrecker. It is true Clark testified he saw Penick with a half pint of whiskey at Payne's road-house and that Penick put the bottle in his pocket (all of which is denied by Penick); but no witness attempted to identify this as the bottle Clark testified Penick had at the road-house. It would be going far afield to let in evidence of a whiskey bottle found near the scene of the accident on a public highway the morning thereafter, when it was in no way identified as belonging to Penick or any occupant of his wrecker.

The appellant offered an instruction on defective brakes to be included in the general duties of Penick, which instruction told the jury it was Penick's duty not to operate the wrecker on the highway with brakes that were defective or our of order. This instruction followed the provisions of Section 2739g-26, Kentucky Statutes, Baldwin's 1936 Edition, and under the evidence in this case should have been given. The jury was entitled to know it was Penick's duty not to drive his wrecker with defective brakes, as the jury might have concluded from the evidence Penick could have averted the collision, or at least reduced its violence, by the application of brakes had they not been defective.

The court properly instructed upon Penick's duty

in passing the truck when the jury was told Penick should use ordinary care in operating his wrecker to avoid colliding with other vehicles; to drive it at a reasonable rate of speed; to keep it under reasonable control; to keep a lookout ahead; and before passing the Whitney truck to give notice of his intention to do so by sounding his horn and not to pass to the right hand side of the highway until he had cleared the truck, Kentucky Statutes, Section 2739g-40, Baldwin's 1936 Edition. We cannot agree with defendant that the jury should have been instructed it was incumbent upon Penick to exercise the highest degree of care in passing the truck; or that he should not attempt to pass the truck until he could do so in safety to himself and the occupants of his wrecker; or that he should not pass the Whitney truck if it were making an attempt to pass the Whitworth car. In passing the truck, the law imposed upon Penick the duty to exercise ordinary care to avoid colliding with it and to comply with the duties imposed by Section 2739g-40. As there was no vehicle approaching from the opposite direction and as there was no obstruction upon the highway, the court properly refused to give defendant's proffered instruction that Penick should not have attempted to pass the truck until the left side of the highway was clear of all traffic or obstruction for 150 feet as is provided in Section 2739g-35, Kentucky Statutes, 1936 Edition. Koltinsky v. Hollowell, 203 Ky. 218, 262 S. W. 6. See Wright v. Clausen, 253 Ky. 498, 69 S. W. (2d) 1062, 104 A. L. R. 480, as to the correlative duties of the operators of automobiles proceeding in the same direction when the rear car is about to pass the one in front.

The court refused defendant's offered instruction "C" to the effect that Weedman and the decedent, Jarrett, should not have entered Penick's wrecker if Penick, although not drunk, had been drinking to such an extent as to affect his driving, and that they should have gotten out of Penick's wrecker if he operated it in a reckless or careless manner; and that if Weedman and Jarrett entered the wrecker with Penick in such condition, or by failing to alight therefrom, if he operated same in a reckless manner, they were guilty of contributory negligence. Although the court by instructions 7 and 8 told the jury that Weedman and decedent were guilty of contributory negligence in the event Penick operated the wrecker at a reckless speed or in a dangerous manner and this fact was known to them, or could have been

known to them by the exercise of ordinary care, and they did not protest and ask to alight therefrom, the court did not instruct that they were guilty of contributory negligence in the event they entered Penick's wrecker when they knew, or by the exercise of ordinary care could have known, he was drinking to such an extent as to affect his driving.

Penick and Weedman and other witnesses introduced in behalf of the plaintiffs testified that Penick was not at all under the influence of intoxicants when he left Payne's road-house with his wrecker following the truck, while other witnesses describe his condition as: "he was not drunk, you could just tell he was drinking beer;" "he was pretty full;" "he was very drunk."

A person, who voluntarily enters an automobile driven by one he knows to be drunk, is guilty of contributory negligence. Winston's Adm'r v. Henderson, 179 Ky. 220, 200, S. W. 330, L. R. A. 1918C, 646; Archer v. Bourne, 222 Ky. 268, 300 S. W. 604. It was held in Robinson & Son v. Jones, 254 Ky. 637, 72 S. W. (2d) 16, 19, that the taking of intoxicants even not the extent of intoxication "begets a spirit of recklessness, and is responsible for numerous accidents." In Brady v. B. & B. Ice Company, 242 Ky. 138, 45 S. W. (2d) 1051, it was held that evidence of intoxication of a driver of an automobile is admissible in connection with other circumstances on the question of negligence or contributory negligence. In Toppass v. Perkins' Adm'x, 268 Ky. 186, 104 S. W. (2d) 423, 426, appears this quotation from 4 Blashfield's Cyc. of Automobile Law, Permanent Edition, Section 2453:

> "Usually it is a question of fact whether a driver was so far intoxicated at the time of an accident as to affect his ability to operate the car, and whether his passenger had any cause, in the exercise of ordinary care, to be apprehensive on that account for his own safety."

Applying the facts in the instant cases to this rule, we conclude the court should have instructed the jury that Weedman and Jarrett were guilty of contributory negligence if they entered Penick's wrecker after they knew, or by the exercise of ordinary care could have known, he was under the influence of intoxicants to such an extent that his driving was affected, and thereby his condition caused or contributed to the accident. While

the instruction offered by defendant did not properly submit to the jury the question of contributory negligence of Weedman and of Jarrett in riding with Penick while Penick was allegedly under the influence of intoxicants, because it did not connect Penick's condition of being under the influence of liquor with the accident; yet, the offered instruction did place the duty on the court to properly instruct the jury on this point. Louisville & Nashville Railroad Company v. Cornett's Adm'r, 237 Ky. 131, 35 S. W. (2d) 10. The court should have given an instruction substantially as follows in the Jarrett case:

The court instructs the jury that it was the duty of Hays Jarrett at the time, place and on the occasion mentioned in the evidence, to exercise ordinary care for his own safety; and if the jury believe from the evidence that at the time Hays Jarrett entered or got into the automobile of Penick, that the said Penick was so under the influence of intoxicants as to render him careless or indifferent to the safety of himself or others, or as to be unable to properly manage, operate or control his automobile, and that Penick's being under the influence of intoxicants, if in fact he was, caused or so contributed to the accident, except for which the accident would not have happened, and that Hays Jarrett knew, or by the exercise of ordinary care could have known, at the time he entered Penick's car that Penick was under the influence of intoxicants, if in fact he was; or if you believe from the evidence that the decedent, Jarrett, after beginning the journey, which allegedly resulted in his death, knew, or by the exercise of ordinary care, could have known, that the said Penick, the driver of said automobile, was so under the influence of intoxicants as to be unable to properly manage, operate or control his automobile, and that the said Jarrett failed to call upon said Penick to stop and to permit him to alight therefrom; or if the jury believe from the evidence that the decedent, Jarrett, after beginning said journey, failed to take any reasonable precaution, which by the exercise of ordinary care he should have taken, to avoid injury to himself, then, or in either event, the said Jarrett was guilty of contributory negligence, and the law is for the defendants, Whitney and Penick, and the jury will so find.

Substantially the same instruction should have been given in the Weedman case, modifying it by inserting Weedman's name for that of Jarrett's, and stating that

the accident resulted in injuries to him instead of death; and limiting recovery as against Whitney since Weedman sued only Whitney.

As this case must be reversed on account of errors in the instructions pointed out above, and as there is evidence that both Penick and Clark, the driver of the Whitney truck, were under the influence of intoxicants, the court on another trial in enumerating the duties of Clark in the first instruction and of Penick in the second instruction, should insert in the first and second instructions immediately following the words "collision with other vehicles on the highway," these words, "not to operate his motor vehicle on the highway while under the influence of intoxicating liquors." Section 2739g-34, Kentucky Statutes, Baldwin's 1939 Supplement.

It was improper for Weedman's attorney to ask him the question, "They were representing to you that they were going to settle with you?" The Court properly refused to let the witness answer this question and admonished the jury not to consider the question. The law looks with favor upon the settlement of controversies and for this reason an offer of compromise is never admissible in evidence upon trial of a case. Powers' Adm'r v. Wiley, 241 Ky. 645, 44 S. W. (2d) 591. No attempt will be made by counsel to introduce such evidence upon another trial, as the question even though unanswered by the witness may influence the jury. Nor should counsel for Weedman be permitted to refer in his argument to the visits of Kiel to the hospital and the purpose of them was to "put something into him, to make promises of some kind," since such argument must infer that some settlement was attempted.

There was much improper argument indulged in by the attorneys representing the various plaintiffs. Counsel for Weedman should not have been permitted to state: "I feel that I am not only representing his cause, gentlemen, but the cause of four little babies at home who are awaiting the return of their father;" or that his client was "a man that will be dependent on the cold charities of a cold world."

This character of argument was condemned in Southern-Harlan Coal Company v. Gallaier, 240 Ky. 106, 41 S. W. (2d) 661; and Newberry Company v. Judd, 259 Ky. 309, 82 S. W. (2d) 359. Counsel for plaintiffs contend no objection was made to such argument. They are

in error in this statement as the record shows on page 336 defendant's motion to discharge the jury on account of improper argument was overruled by the court with an admonition to the jury not to consider the objectionable part of the argument. Also, on page 391 there appears a similar motion. Of necessity, great latitude must be allowed counsel in presenting their argument to the jury, so that the case in all its angles may be covered, and that all reasonable inferences and deductions from the testimony may be presented. However, this does not mean counsel may resort in the argument to matters in no way connected with the issue for the sake of arousing the passion of jurors. On another trial counsel will confine their argument to the issues raised by the evidence and to the instructions of the court.

Judgment reversed. Whole Court sitting.