**BANK ONE, KENTUCKY, N.A., Appellant,**

v.

**Sharlene MURPHY, Appellee.**

No. 2000–SC–0229–DG.

Supreme Court of Kentucky.

Aug. 23, 2001.

John W. Zeiger, Jeffrey A. Lipps, Zeiger & Carpenter, Columbus, OH, Dorothy M. Pitt, Pitt, Fenton & Smith, Louisville, Victor B. Maddox, Dustin E. Meek, Tachau Maddox Hovious & Dickens PLC, Louisville, for appellant.

Thomas E. Clay, Thomas E. Clay, PSC, Louisville, Sean Ragland, Bolus & Ragland, Louisville, for appellee.

## OPINION OF THE COURT

LAMBERT, Chief Justice.

This Court granted discretionary review to consider whether an employer defending a sexual harassment lawsuit is entitled to prevail on an affirmative defense that it has made significant efforts to correct and prevent sexual harassment in the workplace. To resolve this issue in the context of the instant case, it is necessary to determine whether the employer's conduct with regard to prior harassing conduct by the alleged harasser against an employee other than the plaintiff creates a genuine issue of material fact as to the reasonableness of the employer's efforts to correct and prevent the sexual harassment. A second and subsidiary issue is whether an employer commits an impermissible retaliatory act under the Kentucky Civil Rights Act by filing a declaratory judgment action before a potential plaintiff files a lawsuit and while settlement negotiations are ostensibly ongoing.

Sharlene Murphy, Appellee herein, began working for Bank One's predecessor, Liberty National Bank, as a secretary on November 11, 1994. Both Liberty National Bank and Bank One gave Murphy a copy of their policies prohibiting sexual harassment. Bank One's policy provides:

> Employees who experience a situation they consider to have been sexual harassment should contact their supervisor immediately ... You may take your complaint of sexual harassment to the Human Resources Office if your supervisor is the subject of your complaint of sexual harassment, or if you prefer to report your complaint directly to Human Resources, for whatever reason.

Bank One's Code of Ethics, which governs all Bank One employees, states:

> You should report incidents of sexual or other harassment as soon as possible to you personnel director, employee relations area, or other senior officer within Banc One.

Murphy admits that she received copies of both Liberty National Bank One's written policies forbidding sexual harassment and specifying the procedures for reporting alleged sexual harassment.

In October 1995, Murphy began working in the Facilities Management area of the bank under the supervision of Vivian Korphage. In January 1996, she came under the direct supervision of William Gaunt, the alleged perpetrator of the sexual harassment. Gaunt was a bank officer responsible for managing the bank's real estate properties.

The facts giving rise to this lawsuit are hotly disputed by the parties, and thus the following text merely represents an effort to lay open the crucial incidents at issue

and not to resolve them one way or the other. At trial, all relevant evidence will be before the jury for its use in determining whether Murphy was a victim of sexual harassment. According to Murphy's deposition testimony, soon after Murphy began working under Gaunt, she went to his office to discuss problems she was having with a co-worker. During this conversation, Gaunt reached out and held Murphy's hand. She did not perceive this conduct as offensive at the time, believing only that he was being supportive of her. In late January or early February 1996, she initiated a hug with Gaunt in response to a compliment he had paid her.

Around the end of February 1996, Gaunt made comments to Murphy about Korphage's sex life and stated that Korphage had slept her way to the top. At the end of March 1996, Gaunt kissed Murphy on the lips for the first time. By this time, Gaunt had instituted a daily routine of hugging. During one of these daily hugs, Gaunt kissed Murphy and told her that she was the best thing that had happened to him, and that between her and another co-worker, Murphy was the cream of the crop. When Murphy expressed her discomfort, Gaunt told her that it was better to be kissing cousins than enemies.

According to Murphy, Gaunt's behavior remained the same after the first kissing episode. Along with the daily hug, there was inappropriate touching during the hugs, sexually explicit remarks by Gaunt, and several more kissing incidents. While Murphy tried to avoid Gaunt in an effort to evade the daily hug routine, she never refused his requests for hugs nor did she report the incidents or make any complaint.

Murphy contends that she did not perceive Gaunt's behavior as sexual harassment until the first kissing incident at the end of March 1996. Gaunt's allegedly offensive conduct continued for three more months, until June 1996. According to Murphy's deposition testimony, she did not report the alleged harassment immediately because she wanted to try to handle the situation herself. Yet, on June 19, 1996, Murphy told Korphage about Gaunt's behavior. Korphage told Murphy that she likewise had been sexually harassed by Gaunt, and she wished she had handled the matter differently. Korphage encouraged Murphy to go directly to Human Resources and report Gaunt.

Murphy reported the alleged harassment to Joyce Tingle in the bank's Human Resources Department that same day. According to Tingle's deposition testimony, the bank investigated Murphy's allegations immediately. Murphy was allowed a paid leave of absence during the investigation, because she had stated that she was upset and nervous about encountering Gaunt after having lodged her complaint. Seven business days after the report, on Friday, June 28, 1996, 31-year-employee Gaunt resigned in lieu of termination for failing to comply with the bank's Code of Ethics.[1] Murphy acknowledged that she was never again subjected to harassment by Gaunt or any other bank employee.

Murphy returned to work on July 1, 1996, but took medical leave from July 16, 1996 until October 9, 1996. Murphy again left on medical leave from October 22, 1996

---

1. Bank One did not conclude that Gaunt had in fact engaged in sexual harassment within the meaning of KRS 344.040. Rather, it concluded that, based upon uncontested evidence, including Gaunt's admission that he had engaged in consensual hugs and kisses with an administrative assistant, Gaunt's conduct violated the Code of Ethics for bank officers.

until January 30, 1997, at which time she tendered her resignation.

Despite the bank's rapid response to Murphy's report and the absence of any adverse tangible employment action taken against her, on July 15, 1996, by counsel she demanded $250,000 from the bank. On August 6, 1996, she and her counsel met with the bank's counsel and threatened to file a sexual harassment lawsuit absent a satisfactory monetary settlement. The essence of her complaint was that the bank had failed to take appropriate action in 1995 when Korphage reported Gaunt for sexually inappropriate behavior. At that time, Korphage had refused to file a formal complaint against Gaunt and had asked to remain anonymous. Korphage also had refused to cooperate with any investigation into Gaunt's alleged misconduct and had stated that she did not want any adverse action taken against him. Korphage only reported Gaunt's allegedly inappropriate conduct because a new supervisory position was opening at the bank, and she did not want to supervise Gaunt or vice versa.

At the time of the Korphage report, the bank consulted outside counsel, who advised that, in consideration of the nature of the allegations and Korphage's refusal to cooperate further, the bank should inform Gaunt of the allegations, give him a copy of the bank's sexual harassment policy, and inform him that the policy would be enforced. According to the affidavit of Gaunt's supervisor, Gilbert Darnell, the bank informed Gaunt that a female employee had expressed concern about the propriety of his behavior. The importance of the bank's anti-harassment policy was emphasized, and Gaunt was given another copy of the policy and instructed to read it.

The bank told Gaunt that its anti-harassment policy would be strictly enforced and that any violation would be addressed with appropriate disciplinary action, up to and including dismissal. Korphage had no further problems with Gaunt, but later told her story in support of Murphy.

On August 9, 1996, the bank filed a declaratory judgment action in the United States District Court for the Western District of Kentucky, seeking a declaration of rights with respect to the propriety of the bank's actions under *Burlington Industries, Inc. v. Ellerth*[2] and *Faragher v. City of Boca Raton.*[3] According to these cases, employers who take reasonable measures to protect employees against sexual harassment are provided an affirmative defense. The bank did not seek money damages and it expressly disavowed any claim for attorney fees in conjunction with its claim. Murphy countered, within only a few hours, by filing this sexual harassment lawsuit in Jefferson Circuit Court, to which forum the federal court ultimately deferred. The trial court granted summary judgment in favor of the bank. The trial court also denied Murphy's motion to amend her complaint to allege that the bank and its attorneys had engaged in retaliatory conduct in violation of KRS 344.280 by filing the federal declaratory judgment action. A split Court of Appeals panel reversed and remanded for further proceedings.

■ The bank now contends that it was properly entitled to an affirmative defense because it had taken reasonable measures to prevent and correct sexual harassment such as that alleged by Murphy. This affirmative defense was approved by the United States Supreme Court in *Burlington*

2. 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998).

3. 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998).

*Industries, Inc. v. Ellerth*[4] and *Faragher v. City of Boca Raton*,[5] where the two elements of the defense were described as follows:

> When no tangible employment action is taken, a defending employer may raise an affirmative defense to liability or damages ... The defense comprises two necessary elements: (a) *that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior*, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.[6]

(emphasis added). In these cases, the United States Supreme Court discussed the type of proof required for an employer to establish the affirmative defense, stating,

> While proof that an employer has promulgated an anti-harassment policy with complaint procedure is not necessary in every instance as a matter of law the need for a stated policy suitable to the employment circumstance may appropriately be addressed in any case when litigating the first element of the defense. And while proof that an employee failed to fulfill the corresponding obligation of reasonable care to avoid harm is not limited to showing any unreasonable failure to use any complaint procedure provided by the employer, a dem-

onstration of such failure will normally suffice to satisfy the employer's burden under the second element of the defense.[7]

This Court interprets KRS 344.040 in consonance with federal anti-discrimination law.[8] Thus, the *Ellerth/Faragher* affirmative defense is available to employers facing vicarious liability for sexual harassment under KRS 344.040.[9]

The bank contends that both elements of the *Ellerth/Faragher* affirmative defense were established by unrebutted CR 56 evidence. The bank maintains that it met the requirements of the first element, which focuses on the employer's conduct, because it implemented an anti-harassment policy, provided every employee a copy of the policy, and made reasonable efforts to train all employees regarding such policy. Murphy admitted in her deposition testimony that she was aware of the policy and of her obligation to report any improper activities. Also, the bank maintains that it exercised reasonable care to prevent and promptly correct the alleged harassment. It *immediately* investigated Murphy's complaint and within seven business days caused Gaunt, an employee of thirty-one years, to submit his resignation in lieu of termination. Murphy admitted that she was not subjected to any further sexual harassment from Gaunt or any other bank employee following Gaunt's forced resignation.

---

**4.** 524 U.S. 742, 118 S.Ct. 2257, 118 S.Ct. 2257 (1998).

**5.** 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998).

**6.** *Ellerth*, 524 U.S. at 765, 118 S.Ct. 2257; *Faragher*, 524 U.S. at 807, 118 S.Ct. 2275.

**7.** *Id.*

**8.** *Meyers v. Chapman Printing*, Ky., 840 S.Ct. 814, 821 (1992); *Ammerman v. Board*

*of Education of Nicholas County, Kentucky,* Ky., 30 S.W.3d 793, 797 (2000).

**9.** *Ellerth*, 524 U.S. at 745, 118 S.Ct. at 2261, 141 L.Ed.2d at 655; *Faragher*, 524 U.S. at 777, 118 S.Ct. at 2278–2279, 141 L.Ed.2d at 689 (an "employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee").

■ Murphy contends, however, that the bank was aware of Gaunt's propensity to engage in sexually harassing conduct by virtue of the alleged incident involving Korphage about three years earlier and that the bank failed to take proper corrective action at that time, thereby exposing Murphy to a continuation of such conduct. Murphy relies on *Kim Hirase–Doi v. U.S. Communications, Inc.*[10] for the proposition that an employer may be put on notice of an employee's sexual harassing conduct "if [the employer] learns that the perpetrator has practiced widespread sexual harassment in the office place, even though [the employer] may not have known that this particular plaintiff was one of the perpetrator's victims."[11] We accept this view from the *Kim Hirase–Doi* case as a proper statement of Kentucky law, and that brings us to the heart of the matter.

For purposes of this analysis and to determine whether there is an issue of fact sufficient to withstand summary judgment, we take it as true that acts of harassment were committed by Gaunt against Korphage. We also accept as true that Korphage reported the acts to proper human resources personnel, but instructed them to refrain from using her name and insisted that she would not co-operate in an investigation. The bank insists that its representative confronted Gaunt with the Korphage allegations, albeit without identifying Korphage out of respect for her request, and furnished Gaunt with a copy of the bank's anti-sexual harassment procedures and demanded his obedience thereto. An affidavit to this effect is of record. When Gaunt testified by deposition, however, he denied having been confronted with the facts of the Korphage incident by name, and the bank concedes as much. Notably, however, in his deposition Gaunt was not asked whether he had been apprized generally of such a complaint without disclosure of the identity of the complainant, or the details of the allegations. In other words, Gaunt denied knowledge of the Korphage allegations, yet he was not asked whether he had been informed in more general terms about those allegations against him. Thus, the evidence does not converge in a manner that permits a confident answer to this critical question. The record is simply incomplete as to whether the bank confronted Gaunt with the details of the Korphage allegations; and, if such was brought to his attention, whether it did so in a reasonable manner to prevent and correct the misconduct.

A party moving for summary judgment bears the burden of demonstrating entitlement to such relief.[12] When the record is incomplete and the Court would be required to draw inferences or find facts, summary judgment is inappropriate. This Court has long applied a stringent standard to motions for summary judgment, stating that the motion should not be granted unless it appears to be "impossible" for the non-moving party to prevail at trial.[13] Our recent decision in *Roethke v. Pan American Life*[14] is illustrative of our view.

While the bank's response to the Murphy incident appears unassailable, we believe an issue of fact has been presented with respect to whether the bank confronted Gaunt with the essential facts related

---

10. 61 F.3d 777 (10th Cir.1995).

11. *Id.* at 783.

12. *See, e.g., Hubble v. Johnson*, Ky., 841 S.W.2d 169, 171 (1992).

13. *Steelvest, Inc. v. Scansteel Service Center, Inc.*, Ky., 807 S.W.2d 476 (1991).

14. Ky., 30 S.W.3d 128, 133 (2000).

by Korphage and properly demanded corrective action. A resolution of this factual dispute is necessary to determine whether the bank exercised reasonable care to prevent sexual harassment. An answer to these questions will answer the comprehensive question of whether the bank has satisfied its burden under the *Ellerth/Faragher* test.[15]

■ A separate issue is whether the bank violated KRS 344.280 when it filed a declaratory judgment action in the U.S. District Court seeking a determination that it was entitled to prevail on its affirmative defenses under the *Ellerth* and *Faragher* cases. Prior to the commencement of litigation, counsel for Murphy contacted the bank and notified it of the claim. Counsel for the bank invited a settlement offer and such an offer was tendered. Thereafter, the parties and counsel met for a negotiating session at which Murphy was interrogated by counsel for the bank. A few days after the meeting, and while settlement negotiations were apparently ongoing, the bank filed suit in federal seeking a declaration of rights on its affirmative defense. The complaint sought only a declaration of rights; it sought no damages or attorneys' fees whatsoever.

■ Murphy contends that filing a suit while settlement negotiations were ongoing amounts to a violation of KRS 344.280 and is retaliatory in nature. We disagree. While it may amount to bad manners or may appear to some to be unprofessional, such conduct does not constitute a violation of the statute nor is it tortious. Declaratory judgment actions are widely utilized to establish certain fun-

damental rights in ongoing disputes. KRS 418.045 contains an extensive list of subjects and transactions upon which declaratory relief is available. It would be unwise for this Court to introduce limitations upon the rights of parties to seek declaratory relief. Accordingly, the trial court's denial of Murphy's motion to amend her complaint to add a retaliation claim was proper.

Based upon the foregoing reasons, the decision of the Court of Appeals is affirmed in part and reversed in part, and this action is remanded to the trial court for further consistent proceedings.

COOPER, GRAVES, JOHNSTONE, and WINTERSHEIMER, JJ., concur.

KELLER, J., files a separate opinion concurring in part and dissenting in part, in which STUMBO, J., joins.

KELLER, Justice, concurring in part and dissenting in part.

I agree with the majority that the trial court erred when it granted summary judgment in favor of Bank One as to Murphy's KRS 344.040 sexual harassment claim. I write separately, however, because I agree with the Court of Appeals that the trial court abused its discretion when it denied Murphy's motions to amend her complaint to allege KRS 344.280(1) retaliation claims connected with Bank One's decision to interrupt the settlement negotiations and bring a declaratory judgment action in federal court. Although this Court has addressed interpretive issues concerning KRS 344.280(1) only once

---

**15.** Our failure to address the second prong of the *Ellerth/Faragher* test, i.e. whether the plaintiff/employee unreasonably failed to take advantage of any preventative or corrective opportunities, should not be regarded as a

resolution of this issue in Murphy's favor. If the bank chooses, it may contest this issue at trial. Our determination that an issue of fact exists with respect to the first prong of the test renders further elaboration unnecessary.

before [1] (and then merely in passing), the majority devotes only two (2) paragraphs to this issue and cites no meaningful authority in support of its conclusion that "such conduct does not constitute a violation of the statute nor is it tortious." Upon remand, I would require the trial court to allow Murphy to amend her complaint to include these claims. Although I recognize that Murphy may not be able to prove that a retaliatory motive prompted Bank One to file a declaratory judgment action in federal court, and, as such, Murphy may not prevail at trial—or perhaps even survive summary judgment—Murphy's amended complaint raises a claim upon which the trial court could grant relief, and the trial court abused its discretion when it denied Murphy's motion to amend her complaint.

The Kentucky Civil Rights Act creates a cause of action for, among other acts, retaliation against employees who have asserted claims under the Act:

It shall be an unlawful practice for a person, or for two (2) or more persons to conspire:

(1) To retaliate or discriminate in any manner against a person because he has opposed a practice declared unlawful by this chapter, or because he has made a charge, filed a complaint, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under this chapter.... [2]

Count III of Murphy's Amended Verified Complaint set out a retaliation claim under KRS 344.280(1):

26. On or about June 19, 1996, the Plaintiff informed Defendant Bank One through one of its employees of the above described conduct of Defendant Gaunt.

27. Plaintiff was asked if she wanted to leave work during the pending investigation and then told to "kick back and relax and enjoy her paid vacation" by an employee of Defendant Bank One.

28. Plaintiff contacted and retained attorney, Thomas E. Clay. Attorney Clay informed Bank One of his representation of Plaintiff.

29. An employee of Bank One requested that attorney Clay make a demand to resolve Plaintiff's claim. Attorney Clay complied.

30. In response to attorney Clay's demand, Defendant Bank One, requested a meeting with attorney Clay and Plaintiff. Again, attorney Clay and Plaintiff complied.

31. On August 6, 1996, attorney Clay, attorney Mayfield and Plaintiff met with Bank One's attorneys, John Zeiger and Jeffrey Lipps. During this meeting, Bank One's attorneys discussed the law with attorney Clay and then extensively questioned Plaintiff. At the conclusion of this meeting, Bank One's attorneys requested time to contemplate

---

**1.** *See Palmer v. Intern. Ass'n of Machinists,* Ky., 882 S.W.2d 117, 120 (1994).

**2.** KRS 344.280(1). *See also* KRS 344.450 ("Any person injured by any act in violation of the provision of this chapter shall have a civil cause of action in Circuit Court to enjoin further violations, and to recover the actual damages sustained, together with the costs of the lawsuit...." *Id.*). I would note that KRS 344.280(1) offers protection from retaliation

to any *person* while KRS 344.040 affords protection from discrimination only to those in an employer-employee relationship. Admittedly, in most cases, alleged acts of retaliation occur in an employment context, and existing caselaw tends to characterize retaliation in that context. KRS 344.280(1), however, covers a broader range of retaliatory acts. *See infra* note 18 and surrounding text.

the information that they had obtained in this meeting and then respond to attorney Clay's demand. A date and time was set for the following Monday, August 12, 1996 at 9:30 a.m., for a telephonic conference in which Bank One, via its attorneys, would respond to attorney Clay's demand.

32. Instead, however, on Friday, August 9, 1996, Bank One filed in Federal Court and had served on Plaintiff its Declaratory Judgment action.

33. The above described conduct is retaliatory in nature and in violation of KRS 344.280(1).

34. As a direct and proximate cause of Defendant's conduct, the Plaintiff has sustained severe emotional distress, humiliation and embarrassment.

35. The amount to compensate for her injuries involved exceed the jurisdictional limits of this Court.

The trial court interpreted Murphy's claim as alleging a cause of action against only Bank One's attorneys and denied the motion:

> Plaintiff tenders a new Count III which names defense counsel as defendants to this action. Specifically, Plaintiff alleges that defense counsel's filing of a Declaratory Judgment Complaint constitutes retaliatory employment discrimination in violation of KRS 344.280.

CR 15.01 allows a party to amend a pleading once as a matter of course any time before a responsive pleading is filed. Thereafter, a party may amend his pleading only by leave of court or written consent of the adverse party. "[L]eave shall be freely given when justice so requires." CR 15.01. However, the court may deny a motion to amend when the proposed amendment fails to state a claim upon which relief can be granted. *First National Bank of Cincinnati v. Hartmann*, Ky.App., 747 S.W.2d 614, 616 (1988).

The purpose of the Kentucky Civil Rights Act is "to provide for execution within the state of the policies embodied in the Federal Civil Rights Act of 1964 as amended." KRS 344.020. Therefore, Kentucky courts look to federal case law for guidance regarding issues of sex discrimination. In the case of *Mountain Clay, Inc. v. Commission on Human Rights*, Ky.App., 830 S.W.2d 395 (1992), the Kentucky Court of Appeals used federal case law to determine whether Mountain Clay filed a retaliatory action pursuant to KRS 344.280(1).

> Under federal law, in order to prove a *prima facie* case of retaliation under Title VII of the Civil Rights Act of 1964, the employee must establish that:
>
> (1) he was engaged in opposition to practices made unlawful by Title VII or was a participant in the Title VII proceeding
>
> (2) his activity was protected
>
> (3) he was subjected to adverse treatment by the employer or labor union, and
>
> (4) there was a causal connection between his opposition or participation and the retaliation.

*Mountain Clay*, 830 S.W.2d at 396.

In the case at bar, defense counsel, Mr. Lipps and Mr. Zeigler, are clearly not Plaintiff's employers. Rather, Bank One hired these gentlemen to defend this action. If Plaintiff has any viable claim of retaliation regarding the filing of the Declaratory Judgment Complaint, it is against Plaintiff's employer, Bank One, not the attorneys who filed the claim.

. . .

IT IS FURTHER ORDERED that Plaintiff's motion to file a verified amended complaint is DENIED as to Count III.

Murphy subsequently filed another motion containing an identical Count III and asked the trial court to allow her to amend her complaint to allege a retaliation claim against Bank One itself. The trial court denied the motion after concluding that the Kentucky Rules of Evidence prevented Murphy from proving the material allegations of her retaliation claim and that, in any event, Murphy had failed to state a claim upon which relief could be granted:

This matter comes before the Court on the Plaintiff's motion to Amend Verified Complaint. In the Amended Complaint, Plaintiff seeks to add three new counts. Count III contains an allegation that the Defendant Bank One's conduct in filing a Declaratory Judgment action in federal court constitutes retaliation. . . .

The Court first addresses Count III. In part, the opposition is based on the language in an Order of this Court dated December 31, 1996. Said order concerned another motion to amend the Complaint in which plaintiff sought to add an allegation of retaliation against two attorneys for Bank One. In denying the motion as to that Count of the Complaint, the Court stated that "[i]f the Plaintiff has any viable claim of retaliation regarding the filing of the Declaratory Judgment Complaint, it is against Plaintiff's employer, Bank One, not the attorneys who filed the claim."

Upon further reflection the Court is not certain that this statement is correct. This conclusion is based on two reasons. First, the Court is mindful of the fact that the Plaintiff will not be able to introduce evidence of the Declaratory Judgment Complaint without offering the explanation that it occurred in response to settlement negotiations. It is fundamental law that a party may not introduce evidence at trial of offers to settle or compromise. *Whitney v. Penick*, Ky., [281 Ky. 474,] 136 S.W.2d 570 (1940); *Elam v. Wollery [Woolery]*, Ky., 258 S.W.2d 452 (1953). The Court cannot allow the charge of retaliation to circumvent an otherwise established rule of evidence.

The second reason for the change in the Court's opinion is that the Court questions whether the actions of Defendant Bank One in exercising its legal right to seek a declaratory judgment may constitute "retaliation" under KRS Chapter 344. To so hold would effectively deny an employer its rightful access to the courts which is guaranteed by Section 14 of the Kentucky Constitution. The Court may deny a motion to amend a complaint when the proposed amendment fails to state a claim upon which relief can be granted. *First National Bank of Cincinnati v. Hartmann*, Ky.App., 747 S.W.2d 614, 616 (1988).

. . .

WHEREFORE IT IS HEREBY ORDERED that Plaintiff's Motion to Amend Complaint is DENIED.

CR 15.01 governs amendments to pleadings:

A party may amend his pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, he may so amend it at any time within 20 days after it is served. Otherwise a party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires. A

party shall plead in response to an amended pleading within the time remaining for response to the original pleading or within 10 days after service of the amended pleading, whichever period may be longer, unless the court otherwise orders.[3]

Murphy first sought to amend her complaint in November of 1996—over a month after one of the defendants, Gaunt, filed and served his answer. Because Murphy sought to add the retaliation claim after she had been served with a responsive pleading, she could not amend her complaint as a matter of course,[4] and instead sought leave of the court by filing a motion to amend her complaint.

We allow the trial courts discretion with regard to such motions, and review their rulings for abuse of that discretion.[5] However, this Court has recognized "the freedom with which pleadings may be amended" [6] and that CR 15.01's language reflects policy considerations "favor[ing] the right of litigants to have their rights disposed of on the merits rather than technicalities." [7] Accordingly, we factor those policy considerations into our abuse-of-discretion review [8] and focus upon whether the amendment fails to state a claim upon which the trial court could grant relief, or, in other words "the futility of the amendment itself," [9] and:

> The primary consideration of the court should be the proper presentation of the merits of the case. Amended pleadings should be permitted to the extent that they are an aid in the proper disposition of the controversy, provided the party acts in good faith and not for the purpose of delay, and the opposing party is not prejudiced or the trial undu-

---

3. CR 15.01.

4. *See Keweenaw Bay Indian Community v. State of Michigan*, 11 F.3d 1341, 1348 (6th Cir.1993) ("[T]he responsive pleading by the State defendants cut off the Community's right to amend as a matter of course." *Id.*); *Textor v. Bd. of Regents of N. Ill. Univ.*, 711 F.2d 1387, 1391 n. 1 (7th Cir.1983); *Wood v. Santa Barbara Chamber of Commerce*, 705 F.2d 1515, 1521 (9th Cir.1983), cert. denied 465 U.S. 1081, 104 S.Ct. 1446, 79 L.Ed.2d 765 (1984).

5. *See Graves v. Winer*, Ky., 351 S.W.2d 193, 197 (1961) ("Though CR 15.01 provides that leave to amend 'shall be freely given when justice so requires,' it is still discretionary with the trial court, whose ruling will not be disturbed unless it is clearly an abuse." *Id.*); *Bradford v. Billington*, Ky., 299 S.W.2d 601, 603 (1957) ("While liberality in granting leave to amend is desirable, the application is addressed to the sound discretion of the trial judge." *Id.*).

6. *Hoke v. Cullinan*, Ky., 914 S.W.2d 335, 339 (1995).

7. *Kentucky Home Mut. Life Ins. Co. v. Hardin*, 277 Ky. 565, 126 S.W.2d 427, 431 (1938).

8. *See Shermoen v. United States*, 982 F.2d 1312, 1319 (9th Cir.1992) ("We review for an abuse of discretion the district court's denial of leave to amend after responsive pleadings have been filed. The denial is, however, 'strictly reviewed in light of the strong policy permitting amendment.' " *Id.* (citations omitted)).

9. *First Nat. Bank of Cincinnati v. Hartmann*, Ky.App., 747 S.W.2d 614, 616 (1988). *See also Stern v. United States Gypsum, Inc.*, 547 F.2d 1329, 1334 (1977):

> Rule 15(a) provides that "leave shall be freely given when justice so requires," and this circuit has adopted a liberal policy respecting amendments to pleadings so that cases may be decided on the merits and not on the basis of technicalities. As was stated in *Fuhrer v. Fuhrer*, [292 F.2d 140, 143 (7th Cir.1961) ] *"leave to amend should be freely given unless it appears to a certainty that plaintiff would not be entitled to any relief under any state of facts which could be proved in support of his claim."*

*Id.* (emphasis added and citations omitted).

ly delayed.[10]

In my opinion, the trial court abused its discretion when it denied Murphy's motion to amend her complaint.

Bank One argues that the trial court correctly concluded that Murphy's retaliation claim was futile because: (1) Count III failed to state a claim upon which the trial court could grant relief; (2) KRE 408 would prevent Murphy from proving the material facts underlying her claims because those facts concern "settlement negotiations"; and (3) Bank One's attorneys cannot be individually liable for acts of retaliation. Each of these arguments is independently flawed, and none of them support the trial court's rulings.

Bank One argues that Count III of Murphy's Amended Verified Complaint failed to state a claim upon which the trial court could grant relief because (1) retaliation claims require an "adverse employment action," and, as a matter of law, the filing of a federal declaratory judgment action is not an adverse employment action; (2) Kentucky Constitution § 14 guarantees Bank One access to the courts; and (3) under the United States Constitution's supremacy clause, the Federal Declaratory Judgments Act trumps the Kentucky Civil Rights Act. I will address each conclusion in turn.

First, although the federal courts have traditionally required plaintiffs to demonstrate an adverse employment action as an element of the prima facie case for retaliation,[11] many of the Circuit Courts of Appeal have embraced a broad view of adverse employment actions [12] and have recognized that "[t]he law deliberately does not take a 'laundry list' approach to retaliation, because unfortunately its forms are as varied as the human imagination will permit," [13] and held that "even actions taken in litigation could constitute retaliation in appropriate circumstances." [14]

---

**10.** Kurt A. Phillips, Jr., 15 Kentucky Practice (Rules of Civil Procedure Annotated) § 15.01, Comment 3 at 299 (West Publishing Co.1995).

**11.** *See Harrison v. Metro. Gov't of Nashville and Davidson County, Tenn.,* 80 F.3d 1107, 1118 (6th Cir.1996), *Wrenn v. Gould,* 808 F.2d 493, 500 (6th Cir.1987).

**12.** *See Ray v. Henderson,* 217 F.3d 1234, 1241–1242 (9th Cir.2000) (observing that "the First, Seventh, Tenth, Eleventh and D.C. Circuits ... all take an expansive view of the type of actions that can be considered adverse employment actions." *Id.* at 1241). *See also Berry v. Stevinson Chevrolet,* 74 F.3d 980, 985 (10th Cir.1996) (rhetorically reconfiguring the "adverse employment action"element when defining the prima facie case for retaliation as: "(1) protected opposition to Title VII discrimination or participation in a Title VII proceeding; (2) *adverse action by the employer* subsequent to or contemporaneous with such employee activity; and (3) a causal connection between such activity and the *employer's adverse action." Id.* (emphasis added)).

**13.** *Knox v. Indiana,* 93 F.3d 1327, 1334 (7th Cir.1996).

**14.** *Steffes v. Stepan Co.,* 144 F.3d 1070, 1075 (7th Cir.1998). *See also Berry v. Stevinson Chevrolet, supra* note 12 at 985–986 (finding a prima facie retaliation case in an allegation of malicious prosecution); *Beckham v. Grand Affair of North Carolina, Inc.,* 671 F.Supp. 415, 419 (W.D.N.C.1987) ("[T]he allegation that Defendant caused Plaintiff to be arrested and prosecuted in retaliation for her having filed or contemplated an EEOC charge against Defendant states a cause of action against Defendant under 42 U.S.C. § 2000e–3(a)." *Id.*); *Yankelevitz v. Cornell University,* 1996 WL 447749, 1996 U.S.Dist. LEXIS 11298, 71 Fair Empl. Prac. Cas. (BNA) 1662 (S.D.N.Y.1996) ("[T]he Court is unwilling to adopt a rule stating that compulsory counterclaims, or any other legal cause of action, cannot, as a matter of law, constitute retaliation in violation of the employment discrimination laws." *Id.* 1996 WL 447749 at *4, 1996 U.S.Dist. LEXIS 11298 at 14); *EEOC v. Levi Strauss & Co.,* 515 F.Supp. 640, 643 (N.D.Ill.1981) ("[A] state court defamation action filed in retaliation for having engaged in conduct protected by § 704(a), including the filing of a charge with the Commission, violates [the anti-retaliation provisions.]" *Id.*); *EEOC v. Virginia*

Second, although this Court has stated that, because of the overlapping policy goals, federal authority "offers some guidance" [15] to Kentucky Courts faced with interpretive questions, Bank One's reliance upon federal authority in this instance ignores substantive differences between the Kentucky and federal statutes. Kentucky's anti-retaliation provision, KRS 344.280(1), explicitly makes it unlawful for any person "[t]o retaliate or discriminate *in any manner* against a person . . . because he has made a charge . . . under this chapter." [16] The Kentucky provision is thus broader than the one contained in Title VII of 1964 Civil Rights Act [17] because: (1) the Kentucky provision applies to all persons instead of merely employers and labor organizations; [18] and (2) the

Kentucky provision condemns any retaliatory act instead of merely acts of discrimination.

Finally, in *Mountain Clay v. Commission on Human Rights*, [19] the Court of Appeals has interpreted KRS 344.280(1)'s language to include retaliatory litigation:

The Kentucky Civil Rights Act was enacted "to safeguard all individuals within the state from discrimination because of race, color, religion, national original, sex, and age" and to "further the interest, rights and privileges of individuals within the state." KRS 344.020(b). The prohibition against employer retaliation was enacted to protect these rights. As one court has said, "retaliation, whether in the form of a

---

*Carolina Veneer Corp.*, 495 F.Supp. 775, 778 (W.D.Va.1980) (granting summary judgment to plaintiff on retaliation claim based on defendant's filing of groundless state court defamation action). Even the primary authority cited by Bank One, *Zanders v. National Railroad Passenger Corporation*, 898 F.2d 1127 (6th Cir.1990), examines the plaintiff's claim that the defendant brought a lawsuit against her in retaliation for her testimony in connection with a former co-worker's employment discrimination case in the context of *summary judgment* —not FRCP 12(b)(6)—and evaluated the plaintiff's evidence of retaliatory motivations. *See Id.* at 1136 ("Viewed in light of the evidentiary burdens in this case, and given Zanders' burden to prove that the state lawsuit was a means of retaliating against her, Zanders has failed to present any evidence which would tend to show that Amtrak's articulated reason was pretextual." *Id.*).

**15.** *Mountain Clay v. Com'n on Human Rights*, Ky.App., 830 S.W.2d 395, 396 (1992).

**16.** KRS 344.280(1).

**17.** *See* 42 U.S.C. § 2000e–3 (2001):
(a) Discrimination for making charges, testifying, assisting, or participating in enforcement proceedings. It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment,

for an employment agency, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, to discriminate against any individual, or for a labor organization to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership because he has opposed any practice made an unlawful unemployment practice by this title or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this title.
*Id.*

**18.** *See* KRS 344.010(1) (" 'Person' includes one (1) or more *individuals*, labor organizations, joint apprenticeship committees, partnerships, associations, corporations, legal representatives, mutual companies, joint-stock companies, trusts, unincorporated organizations, trustees, trustees in bankruptcy, fiduciaries, receivers, or other legal or commercial entity; the state, any of its political or civil subdivisions or agencies." *Id.*); *Palmer v. Intern. Ass'n of Machinists, supra* note 1 at 120 (remanding retaliation action against two non-employer *individuals*)

**19.** *Supra* note 15.

subsequent discharge or court proceeding, places an added cost on the exercise of those rights and as such has a 'chilling effect.' Only by enjoining suits filed in retaliation for the exercise of protected rights can those rights be ensured."[20]

Bank One argues that the facts of this case are factually distinguishable from *Mountain Clay*. While the defendant in *Mountain Clay* sought an injunction to prevent the Commission from conducting a hearing on the plaintiff's sexual discrimination claim and requested that the plaintiff "be held personally liable for all costs incurred by the corporation in defending against her action,"[21] Bank One sought only declaratory judgment and specifically disclaimed any entitlement to costs or attorneys' fees. We believe, however, that this emphasis on facts ignores the nature of the inquiry—whether Count III of Murphy's amended complaint states a claim upon which relief can be granted. While the factual differences may be relevant to whether Murphy can prevail on the merits of her claim by proving that Bank One had retaliatory purposes for filing the action in

federal court,[22] authority from both the federal courts and the Kentucky Court of Appeals supports the conclusion that litigation brought in bad faith and for retaliatory purposes can constitute actionable retaliation. Bank One's decision to file a federal declaratory judgment action raises the possibility of coercive retaliatory purposes because the federal case created an additional layer of expense and exposure. Murphy "must yet prove her case, and nothing in this opinion should be read to suggest a particular outcome on the merits of Plaintiff's claim."[23]

Bank One's latter two arguments concerning Kentucky Constitution § 14 and the supremacy clause of the United States Constitution constitute little more than grandstanding because the fact that state anti-discrimination law would provide a remedy for retaliatory abuse of the federal declaratory judgment process does not implicate either constitutional provision. Parties remain free to seek declaratory judgment in the federal courts, but may not abuse that right with impunity. In *Raine v. Drasin*,[24] this Court stated that

---

**20.** *Id.* at 397 (quoting *EEOC v. Levi Strauss & Co., supra* note 14 at 642).

**21.** *Id.* at 396.

**22.** *See Kentucky Center for the Arts v. Handley,* Ky.App., 827 S.W.2d 697, 701 (1991):

> The plaintiff, in making out a *prima facie* case, must show that 1) she engaged in a protected activity, 2) she was disadvantaged by an act of her employer, and 3) there was a causal connection between the activity engaged in and the employer's act. Again, if the employer articulates a legitimate, non-retaliatory reason for the decision, the employee must show that "but for" the protected activity, the adverse action would not have occurred.

*Id.; Zanders v. National Railroad Passenger Corp., supra* note 14 at 1134 ("In a retaliation claim, a plaintiff alleges that she has been mistreated for engaging in protected activity,

and that the employer's motivations are therefore illicit. Thus, a retaliation claim is analogous to an intentional discrimination claim, or 'disparate treatment' claim, where *the employee must prove the employer's discriminatory intent.*" *Id.* (emphasis added)); *EEOC v. Levi Strauss Co., supra* note 14 at 644 ("[I]t cannot be concluded that all defamation actions in the wake of sexual harassment charges filed before the Commission are violations of Title VII. Rather those suits initiated in state court in good faith and as an attempt to rehabilitate the employer's reputations which may have been tarnished by the charges are not necessarily violations of the Act.... [T]he Commission must demonstrate that the action was filed for improper, i.e. retaliatory purposes." *Id.*).

**23.** *Beckham v. Grand Affair of North Carolina, Inc., supra* note 14 at 419–420.

**24.** Ky., 621 S.W.2d 895, 899 (1981).

"[p]ublic policy requires that all persons be able to freely resort to the courts for redress of a wrong, and the law should and does protect them when they commence a civil ... action *in good faith and upon reasonable grounds.*"[25] If a party uses the courts to coerce an individual into abandoning her employment discrimination claim, these constitutional provisions offer no refuge.

Nor do the Kentucky Rules of Evidence provide a basis for concluding that Murphy's claim is futile. Initially, I would note that questions regarding a plaintiff's ability to prove the merits of his or her claim are not relevant to whether that claim is one upon which relief can be granted. In this case, however, it does not appear that the Rules of Evidence would interfere with Murphy's proof. Although Murphy's retaliation claim is connected with Bank One's actions during the course of settlement negotiations, KRE 408 prohibits the introduction of offers to compromise and statements made in the context of settlement negotiations only if such evidence is offered to "prove liability for or invalidity of the claim or its amount"[26] and KRE 408 specifically states that it "does not require exclusion when the evidence is offered for another purpose...."[27] Accordingly, while policies favoring voluntary dispute resolution[28] would prevent Murphy from introducing evidence that Bank One offered a sum of money to settle her claim as evidence of Bank One's liability for sexual harassment, KRE 408 would not prevent her from framing the context of

Bank One's decision to unilaterally and without warning withdraw from settlement negotiations and file a federal declaratory judgment action as evidence of bad faith.

Finally, the trial court erroneously held that Bank One's attorneys could not be individually liable under Kentucky's anti-retaliation provision because they did not have an employer-employee relationship with Murphy. KRS 344.280(1) refers to the unlawful practices of "a *person,* or ... two (2) or more *persons* [in conspiracy]"[29] and the word "employer" cannot be found in this provision. This Court has interpreted this language according to its plain meaning to include non-employers.[30] Of course, Murphy must prove retaliatory motives on the part of any defendant before she may prevail on her claim, but the trial court abused its discretion when it denied Murphy's motion to amend her complaint to include a KRS 344.280(1) retaliation claim against Bank One's attorneys.

Because none of the reasons given for the trial court's rulings withstand scrutiny and proper presentation of the merits of this action requires consideration of Murphy's KRS 344.280(1) retaliation claim, the trial court abused its discretion when it concluded that Count III in Murphy's Amended Verified Complaint failed to state a claim upon which relief could be granted. I would affirm the entirety of the Court of Appeals opinion and remand the case to the trial court for it to allow

---

**25.** *Id.* (emphasis added).

**26.** KRE 408.

**27.** *Id.*

**28.** *See* 1992 Kentucky Evidence Rules Study Commentary to KRE 408 ("The law has long fostered voluntary dispute resolution by pro-

tecting against the possibility that a compromise or offer of compromise might be used to the disadvantage of a party in subsequent litigation. This is the essence of the first sentence of Rule 408...." *Id.*).

**29.** KRS 344.280(1).

**30.** *See supra* note 18 and surrounding text.

Murphy to amend her complaint to include Count III.

STUMBO, J., joins this opinion, concurring in part and dissenting in part.